HIGHGATE CONDOMINIUM ASSOCIATION *v.*
WATERTOWN FIRE DISTRICT ET AL.
(13484)

PETERS, C. J., HEALEY, COVELLO, HULL and SANTANIELLO, Js.

Argued November 3, 1988—decision released February 7, 1989

*Frederick W. Krug,* with whom was *Richard A. Danen,* for the appellant (plaintiff).

*Daniel E. Casagrande,* with whom was *John H. Cassidy, Jr.,* for the appellees (defendants).

HULL, J. This case concerns the validity of sewer service charges contractually imposed by a quasi-municipal fire district upon persons residing outside of the fire district's territorial limits. The plaintiff, Highgate Condominium Association, is the duly authorized representative of the residents of a condominium complex located within the town of Watertown, but outside the limits of the defendant Watertown Fire District (fire district). The plaintiff brought an action in the Supe-

rior Court seeking a judgment declaring that the annual sewer service charges imposed upon it by the fire district for the years 1982 through 1986 for the plaintiff's use of the fire district's sewage treatment facilities were excessive and illegal, and claiming injunctive relief and damages. After a trial to the court, judgment was rendered in favor of the defendants.[1] The plaintiff has appealed. We find no error.

According to the stipulated facts, the fire district, a quasi-municipal corporation located within the town of Watertown, was created by a Special Act in 1913 that authorized it to construct sewers and to maintain and repair a complete system of sewage and drainage within its territorial limits. 16 Spec. Laws 863, No. 212, § 3 (1913). In addition to sewer service, the fire district provides for street lighting and for the installation and maintenance of water hydrants within its water system. The fire district is governed by a three member elected body called the Fire District Committee. In order to pay for the services it provides, the fire district imposes a tax upon property owners within its boundaries. The amount of the tax is determined by multiplying the assessed value of the various properties by a mill rate that is fixed annually by the Fire District Committee. The fire district has utilized this assessed value or "ad valorem" method of taxation to charge for the cost of its services since its inception in 1913. By Special Act in 1941, the fire district was authorized by the legislature to extend sewer service to parties residing outside of its territorial limits, but within the town of Watertown, "upon such terms and

---

[1] The Watertown fire district is the named defendant in this lawsuit. The second defendant is Duane George, who is presently the superintendent of the fire district and in that capacity is responsible for the collection of sewer service charges imposed by the fire district upon persons, such as the plaintiff's members, who reside outside of the fire district's territorial limits.

conditions as the fire district committee acting with respect to sewers . . . may determine to be fair and proper." 23 Spec. Laws 839, No. 218, § 2 (1941).

In 1964, two real estate developers, John A. Errichetti and Armand M. Errichetti, were in the process of constructing several apartment houses on a fifty acre parcel of land they owned in the town of Watertown. The construction site was located approximately one quarter mile outside of the limits of the fire district. Access to an adequate sewer system was necessary before the apartment houses could be occupied. Thus, in November, 1964, the Errichettis entered into a series of agreements (Errichetti agreements) with the nearby fire district calling for, inter alia, the connection of the apartment houses to the fire district's sewer system. The fire district was authorized to enter into this "outside party" agreement pursuant to the powers extended to it by the legislature in the 1941 Special Act. In exchange for the connection to and use of the fire district's sewer system, the Errichetti agreements provided that the owners of the apartment houses would be obligated to make annual payments to the fire district in an amount equal to what they would have been required to pay in taxes to the fire district if the land and apartment houses were located within the fire district, plus 50 percent. The terms and conditions of the Errichetti agreements, including this formula for determining sewer service charges, were expressly made binding upon all successors in interest to the property.

On or about August 4, 1981, the property was conveyed to Highgate Enterprises, Inc. (Highgate), a Connecticut corporation. Highgate immediately converted the apartments into the condominium form of ownership pursuant to General Statutes § 47-88b et seq., thereby creating 126 individual condominium units. All of these units are tied into and served by the fire district's sewer system. Notice to prospective purchasers

that the condominium units were being conveyed subject to the terms and conditions contained in the Errichetti agreements, including the formula for computing sewer service charges, was provided in both the public offering statements and the "Declaration of Condominium" issued by Highgate during the conversion process. In making the conversion, Highgate also established the plaintiff Highgate Condominium Association pursuant to General Statutes § 47-74a.[2] The plaintiff is the duly appointed agent of the owners of all of the condominium units and in that capacity is authorized to pay on their behalf all sewer service charges that may be due and owing the fire district.

For the years 1981 through 1986, the fire district submitted the following sewer service charges to the plaintiff:

| Billing Date | Charge |
|---|---|
| August 15, 1981 | $ 6,832.62 |
| August 15, 1982 | 19,176.30 |
| August 15, 1983 | 21,355.43 |
| August 15, 1984 | 21,355.43 |
| August 15, 1985 | 21,355.43 |
| August 15, 1986 | 21,355.43 |

[2] General Statutes § 47-74a provides in pertinent part: "(a) When unit owners other than the declarant own more than one-third of the units in the condominium, they shall be entitled to elect not less than one-third of the members of the board of directors of the unit owners' association. Unit owners other than the declarant shall elect not less than a majority of the members of the board of directors of the unit owners' association not later than five years after the date of the recording of the original declaration, and, prior to the expiration of such five-year period, shall be entitled to elect not less than a majority of the members of the board of directors upon the happening of the earlier of the following two events: (1) Sale by declarant of sixty per cent of the units in the condominium or (2) completion of seventy-five per cent of the units in the condominium, with some such units

These annual charges were determined pursuant to the sewer service formula contained in the Errichetti agreements, i.e., the assessed value of the property (land and buildings) multiplied by the current mill rate, plus 50 percent. In 1981, prior to their conversion into condominiums, the land and apartment houses were assessed at a value of $1,265,300. For the years 1982 through 1986, the value of this same property was assessed at $2,905,500. This increase in assessed value occurred directly as a result of the conversion of the property to the condominium form of ownership in August, 1981. Of course, when this enhanced assessed value was factored into the formula for determining the plaintiff's sewer service charges for the years 1982 through 1986, it resulted in a substantial increase in the charges for those years over the charges imposed in years prior, such as 1981, when the assessed value of the property was considerably less.[3] The plaintiff paid the sewer service charges submitted to it by the fire district for the years 1982, 1983 and 1984 under protest. For each of the years 1985 and 1986, the plaintiff made a partial payment of $7500 to the fire district, which it claims fairly and adequately compensated the fire district for the sewer services provided to the plaintiff in those years.

In July, 1985, the plaintiff instituted a declaratory judgment action seeking injunctive relief and damages

having been sold, but no more than six units having been sold in the six-month period preceding the call for an election pursuant to subsection (b) hereof. . . .

"(b) At any time after unit owners other than the declarant are entitled to elect a member or members of the board of directors of an association, the association shall call and give not less than thirty nor more forty days notice of a meeting of the unit owners for this purpose. Such meeting may be called and the notice given by any unit owner if the association fails to do so."

[3] Increases in the mill rate from 3.6 to 4.4 in 1982, and from 4.4 to 4.9 in 1983, also contributed to the plaintiff's rising sewer service charges.

for the imposition of allegedly unreasonable and unlawful sewer service charges by the defendants. The relevant portions of the plaintiff's five count amended complaint dated February 17, 1987, contain the following allegations. In the first count, the plaintiff claimed that "[t]he amounts charged by the defendant Fire District in August, 1982, 1983, 1984, 1985 and 1986 are unreasonable and far in excess of the charge that would compensate the defendant Fire District for the cost of sewer services provided." In the second count, the plaintiff alleged that "[t]he sewer use charges imposed by the defendant Fire District for each of the years 1982, 1983, 1984, 1985 and 1986 were imposed in violation of the provisions of the Special Acts which determine the authority of the defendant Fire District in that the Fire District Committee could not reasonably determine that such charges are 'fair and proper' for the sewer services provided." The third count, which was withdrawn after trial, stated that "[t]he method which the defendant Fire District uses to determine sewer use charges is arbitrary, illegal and in violation of the powers conferred upon the Fire District . . . . " The fourth count, not relevant to this appeal, was also withdrawn after trial. Finally, in the fifth count, the plaintiff claimed that "[t]he assessed value method of determining sewer use charges has never been enacted in any ordinance, regulation or resolution of the defendant Fire District. . . . Consequently, the use of the assessed value method by the defendant Fire District . . . is and has been unauthorized and illegal as a method of imposing sewer use charges."

The case was referred to *Hon. Joseph F. Morelli,* state trial referee, and judgment was rendered for the defendants. With respect to the first and second counts of the plaintiff's amended complaint, in its memorandum of decision dated July 21, 1987, the trial court found that the sewer service charges imposed upon the

plaintiff for the years in question were fair and reasonable and therefore not violative of the fire district's charter provisions. On the fifth count attacking the procedural validity of the sewer service formula used by the defendants to compute the plaintiff's sewer service charges, the trial court ruled that "[t]he Fire District's Charter authorizes the defendant to establish sewer charges without any direction for the need of an ordinance, regulation or resolution." The trial court also expressly upheld the substantive validity of the sewer service formula, despite the fact that the third count in the plaintiff's amended complaint, which challenged the substantive validity of the formula, had been withdrawn after trial.

Additionally, the trial court appeared to offer an alternate basis for its decision in favor of the defendants, i.e., by taking title to their condominium units with notice of the sewer service formula contained in the Errichetti agreements, the plaintiff's members had "waive[d]" their right to "challenge" the validity of the formula and the sewer service charges computed thereunder. A motion for articulation filed by the plaintiff on August 19, 1987, was denied by the trial court.

On appeal, the plaintiff claims the trial court erred: (1) in ruling that the plaintiff's members waived their right to challenge the validity of the sewer service formula and the charges computed thereunder; (2) in determining that the sewer service formula used by the defendants is a fair, reasonable and authorized method for determining the plaintiff's sewer service charges; (3) in disregarding sewage treatment costs submitted into evidence by the plaintiff; and (4) in finding that the sewer service charges imposed upon the plaintiff for the years 1982 through 1986 were fair and reasonable and therefore legally imposed under the fire dis-

trict's charter provisions. The plaintiff also assigns error to the trial court's denial of its posttrial motion for articulation.

## I

We address first the question of whether this appeal is properly before us. In its memorandum of decision, the trial court stated: "The plaintiff is not entitled to judicial examination of the 1982–1986 imposed charges since it failed to convince the court by a fair preponderance of the evidence that it is entitled to the same . . . . All purchasers of the condominium units [i.e., the plaintiff's members] were aware of the Errichetti agreements before title was taken; Public Offering Statements issued by Highgate Enterprises upon conversion of the Apartment Complex to condominium concept including [sic] notice by way of Declaration of Condominium. All [of the foregoing] informed purchasers [that] conveyance would be subject to the Errichetti Agreements, therefore each purchaser knowingly and voluntarily took title to the units made subject to the said terms and conditions. Not presenting a challenge at the proper time is tantamount to a waiver." We treat this ruling of the trial court as a determination on its part that the plaintiff's members were required to challenge the sewer service formula, of which they had notice prior to the purchase of their condominium units, at the time they took title to their units, and that their failure to do so constituted a waiver that now precludes them from obtaining judicial review of the validity of the formula or the sewer service charges imposed thereunder.

The plaintiff contends that judicial review of its claims is not barred on the basis of its members' notice of the Errichetti agreements and it assigns error to the trial court's ruling to the contrary. The plaintiff maintains that where, as here, a claim is made that a utility dis-

trict is acting beyond the scope of the authority granted to it by the legislature, a court may intervene to examine the alleged unauthorized acts of the utility district and declare them legal or not. We agree.

In *Alarm Applications Co. v. Simsbury Volunteer Fire Co.,* 179 Conn. 541, 548, 427 A.2d 822 (1980), this court stated: "We have long recognized the capacity of taxpayers of towns and cities to challenge the legality of the actions of their municipal officers by seeking injunctive relief against such action. See *Belford* v. *New Haven,* 170 Conn. 46, 52–53, 364 A.2d 194 (1975); *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953); *Sauter* v. *Mahan,* 95 Conn. 311, 314, 111 A. 186 (1920); *Mooney* v. *Clark,* 69 Conn. 241, 244, 37 A. 506 (1897); *New London* v. *Brainard,* 22 Conn. 553, 557 (1853). Such actions may also be brought where the alleged improper action is that of a quasi-municipal corporation. See *Larkin* v. *Bontatibus,* [145 Conn. 570, 576, 145 A.2d 133 (1958)]." We further noted that "our cases in this area have required two conditions for the maintenance of actions seeking to challenge municipal conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer 'some pecuniary or other great injury.' *Bassett* v. *Desmond,* supra, 430." *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra, 549.

In its amended complaint dated February 17, 1987, the plaintiff repeatedly alleges that it suffered a financial injury due to the defendants' imposition of sewer service charges which the plaintiff claims were illegal. Thus, the plaintiff's amended complaint clearly complies with the second condition for standing recited in *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.,* supra. With regard to the first condition requiring that the plaintiff must be a taxpayer of the munic-

ipal entity, we find that the plaintiff's members qualify as taxpayers of the fire district for purposes of instituting this declaratory judgment action despite their residence outside of the fire district's territorial limits. The facts presented in this case clearly demonstrate that the plaintiff's members are in all significant respects the functional equivalent of taxpayers of the fire district. Further, our failure to recognize that the plaintiff and its members have standing to institute this declaratory judgment action would in effect erect an impenetrable barrier to any judicial scrutiny of the legality of the actions of the fire district. This we will not permit. See *Boryszewski* v. *Brydges,* 37 N.Y.2d 361, 364, 334 N.E.2d 579, 372 N.Y.S.2d 623 (1975); *State Communities Aid Assn.* v. *Regan,* 112 App. Div. 2d 681, 682, 492 N.Y.S.2d 497 (1985).

Nor is our position on the reviewability of this case altered by the fact that, at the time they took title to their condominiums, the members of the plaintiff had constructive notice of the Errichetti agreements and the formula for computing the plaintiff's annual sewer service charges contained therein. If the charges levied upon the plaintiff by the fire district are deemed to have been in violation of the fire district's charter provisions, as the plaintiff has alleged, the contractual agreements through which such illegal charges were imposed would also be, necessarily, unauthorized and thus without legal force and effect, the plaintiff's members' knowledge and acceptance of such agreements at the time of purchase notwithstanding: "The charter or statute by which the municipality is created is its organic act. *Neither the corporation nor its officers can do any act, make any contract, or incur any liability not authorized thereby, or by the legislative act applicable thereto. All acts beyond the scope of the powers granted are void.* Thus, in the exercise of its powers, a municipal corporation is said to be confined to the circumference of

those granted and may not travel beyond the scope of its charter or in excess of the granted authority." (Emphasis added.) 56 Am. Jur. 2d., Municipal Corporations § 227 (1971); see *Lombardi* v. *Bridgeport,* 194 Conn. 601, 604, 483 A.2d 1092 (1984) (agents of a city have no source of authority beyond the municipality's charter); *Perretta* v. *New Britain,* 185 Conn. 88, 92–93, 440 A.2d 823 (1981); cf. *Miller* v. *Eighth Utilities District,* 179 Conn. 589, 594, 427 A.2d 425 (1980). Accordingly, we conclude that the plaintiff did not waive its right to challenge the validity of the sewer service charges in question when its members took title to their condominium units with knowledge of the agreements through which such charges would be imposed.

## II

We next consider the plaintiff's claim that the trial court erred in ruling that the sewer service formula used by the defendants to compute the plaintiff's annual sewer service charges is a fair, reasonable and authorized method for determining such charges. As noted previously, the charges in question were determined by multiplying the assessed value of the plaintiff's property by the current mill rate, and then adding a 50 percent surcharge. In its brief, the plaintiff mounts two separate attacks upon the validity of this formula, the first directed at the formula's use of the assessed value of the plaintiff's property, and the second aimed at the formula's imposition of a 50 percent surcharge. We refuse to address either of these arguments on appeal, however, because of the plaintiff's withdrawal, after trial, of the third count of its amended complaint, which contained the only allegations in the amended complaint challenging the substantive validity of the sewer service formula.[4] When the plaintiff withdrew the third

---

[4] The fifth count of the plaintiff's amended complaint, which was not withdrawn, does in fact challenge the validity of the sewer service formula, but

count with the trial court's consent,[5] the trial court lacked the jurisdiction to rule on the issue raised in that pleading, i.e., the substantive validity of the sewer service formula, and its conclusions on this point are therefore a nullity. See *Doublewal Corporation* v. *Toffolon,* 195 Conn. 384, 390–91, 488 A.2d 444 (1985) (judgment must ordinarily be restricted to issues reasonably within the scope of the pleadings); *Gordon* v. *Tufano,* 188 Conn. 477, 482, 450 A.2d 852 (1982) (trial court lacked jurisdiction to determine validity of promissory note on usury ground where issue had not been raised in pleadings). The resulting absence of a judgment on the issue of the substantive validity of the sewer service formula precludes this court from entertaining on appeal arguments, such as the plaintiff's, relating to that precise question. See Practice Book § 4000.

## III

The plaintiff next contends that, in ruling upon the reasonableness of the sewer service charges in question, the trial court improperly disregarded evidence relating to the fire district's sewage treatment costs, evidence which the plaintiff claims the court was compelled to accept. Specifically, the plaintiff introduced into evidence a chart that it claimed accurately reflected the cost to the fire district to treat the sewage emanating from the plaintiff's condominium complex during the years 1982 through 1986. The following yearly

---

on specified procedural grounds only. The plaintiff makes no claim on this appeal relating to the allegations contained in the fifth count or the trial court's ruling as it pertains to that count.

[5] The trial court clearly consented to the plaintiff's withdrawal of the third and fourth counts of its complaint, as evidenced by the judgment file, signed by the trial referee, which states in pertinent part: "And thence to April 27, 1987, when the parties appeared for trial and submitted to the court a stipulation of facts with attached exhibits dated February 17, 1986, at which time the parties were at issue as to the first, second and fifth counts of plaintiff's amended complaint, the plaintiff having withdrawn the third and fourth counts thereof."

claimed sewage treatment costs, as well as the undisputed corresponding annual sewer service charges, were submitted into evidence by the plaintiff:

| Year | Treatment Cost | Charge |
|------|---------------|--------|
| 1982 | $ 7,661.70 | $19,176.30 |
| 1983 | 5,737.42 | 21,355.43 |
| 1984 | 8,135.41 | 21,355.43 |
| 1985 | 10,285.60 | 21,355.43 |
| 1986 | 12,425.46 | 21,355.43 |

The plaintiff arrived at these yearly treatment costs through a series of arithmetical calculations involving information stipulated to by the parties, such as the total number of gallons of water used by the condominium complex, the total number of gallons of sewage treated by the fire district, and the total fire district budget allocable for sewage treatment, for each of the years in question. The treatment costs themselves, however, were not agreed upon by the parties, and, in fact, the defendants' expert testified that he believed they were based upon insufficient data and therefore inaccurate. The trial court, relying upon this testimony of the defendants' expert, did not accept the plaintiff's treatment cost estimates in making its determination that the sewer service charges imposed upon the plaintiff were fair and reasonable.

On appeal, the plaintiff contends that the trial court's rejection of its treatment cost figures constituted reversible error. In essence, the plaintiff argues that because it calculated the treatment costs by using underlying facts that were stipulated to by the parties, the trial court was compelled to accept these costs as if they too had been agreed upon by the parties.[6] We

[6] Under ordinary circumstances, a formal agreement or stipulation of fact fairly entered into is controlling on the parties and the court is bound to enforce it. See, e.g., *Pyne* v. *New Haven,* 177 Conn. 456, 464, 418 A.2d 899 (1979).

are unpersuaded. We do not accept the plaintiff's proposition that a fact not directly agreed upon by parties to a lawsuit may nevertheless attain the force and effect of a stipulation merely because that fact is a "by-product" of other, underlying stipulated facts. If the plaintiff wished to be relieved of its burden of proof in this case on the issue of sewage treatment costs through an agreement of the parties, it was necessary for the plaintiff to enter into a stipulation with the defendants that expressly encompassed those costs. This it failed to do. Consequently, we conclude that the trial court was free to accept or reject the plaintiff's sewage treatment cost figures based upon all of the evidence presented, and, in view of the trial court's reliance upon the testimony of the defendants' expert questioning the accuracy of the figures, we cannot say that the trial court erred in rejecting them. Our conclusion on this point is also dispositive of the plaintiff's next claim, i.e., the trial court erred in determining that sewer service charges levied upon the plaintiff by the fire district for the years 1982 through 1986 were fair and reasonable.

It is axiomatic that before a court may make a finding regarding the reasonablenss of utility rates, a party challenging those rates must prove two things: first, the amount of the charges imposed upon that party for the municipal services rendered, and second, the cost to the municipality to provide those services. See, e.g., *Ansonia* v. *Ansonia Water Co.*, 101 Conn. 151, 125 A. 474 (1924). It is the differential between these two factors upon which a court's determination of reasonableness ordinarily must rest. Id. At trial, the charges imposed upon the plaintiff for the sewer services it received were not in dispute. The cost to the fire district to provide these services, however, was an issue in the case and it was the plaintiff's burden to establish this factor. The plaintiff's failure to do so, as evi-

denced by the trial court's rejection of the plaintiff's sewage treatment cost estimates, was fatal to the plaintiff's case in that it effectively precluded the trial court from reaching any finding with respect to the reasonableness, or unreasonableness, of the sewer service charges in question. Accordingly, we conclude that the trial court's determination that the plaintiff failed to prove by a fair preponderance of the evidence that the sewer service charges imposed upon it by the defendants were excessive or illegal was not clearly erroneous.[7]

## IV

The plaintiff's final claim on appeal is that the trial court erred in denying the plaintiff's posttrial motion for articulation. We have held that "where a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal of the rectification memorandum to this court via the motion for review. Practice Book §§ 3082, 3108 [now §§ 4051, 4054] . . . ." (Citations omitted.) *Barnes* v. *Barnes,* 190 Conn. 491, 493 n.2, 460 A.2d 1302 (1983). The plaintiff failed to move for review in this court of the trial court's refusal to articulate further its decision. Accordingly, we decline to address the plaintiff's assignment of error on that point.

There is no error.

In this opinion the other justices concurred.

---

[7] We have indicated previously that a trial court's findings regarding the reasonableness of utility rates is governed by a "clearly erroneous" standard of appellate review. See, e.g., *Barr* v. *First Taxing District,* 151 Conn. 53, 57, 192 A.2d 872 (1963) (court's responsibility on appeal was to determine whether trial court was obliged to find that plaintiffs had established by a fair preponderance of the evidence that utility rates were unlawfully discriminatory). We conclude that this is the standard of review applicable to the trial court's findings regarding the reasonableness of the sewer service charges at issue in this case.