JOHN PILLAR ET AL. *v.* TOWN OF GROTON ET AL.
(AC 16604)

Dupont, C. J., and Spear and Freedman, Js.

Argued June 9—officially released July 11, 1997*

*Eugene C. Cushman,* for the appellants (plaintiffs).

*Kimberly A. Colfer,* with whom, on the brief, was *Andrew Brand,* for the appellees (defendants).

*Opinion*

FREEDMAN, J. The plaintiffs[1] appeal from the judgment of the trial court denying their request for an injunction against the defendants.[2] The plaintiffs

---

* July 11, 1997, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The plaintiffs, John Pillar, Clyde W. Burrell, Jr., and Dennis Gagnon, are citizens, residents, taxpayers and voters of the town of Groton.

[2] The defendants are the town of Groton, the Groton town council, Groton town council members Dolores E. Hauber, Rose Marie Althuis, Lori N. Bartinik, Jane S. Dauphinais, Catherine Kolnaski, Frank O'Beirne, Jr., Harry Watson and Chaz Zezulka III, Groton town manager Robert P. LeBlanc, and Groton town clerk Barbara Tarbox.

claimed that any ordinances, resolutions or votes at a special meeting held by the Groton town council on June 25, 1996, were illegal because one of the members of the Groton town council was not a resident of the town of Groton at the time of the meeting. The plaintiffs claimed that, if carried out, those ordinances, resolutions or votes would cause large sums of money to be expended by the town of Groton. We disagree with the plaintiffs and affirm the judgment of the trial court.

The trial court found the following facts. On June 25, 1996, the Groton town council held a special meeting. Present at that meeting were council members Dolores E. Hauber, Lori N. Bartinik, Jane S. Dauphinais, Frank O'Beirne, Jr., Bernard W. Steadman and Harry Watson. At that meeting, the council set a date for a public hearing for an ordinance appropriating $450,000 for additions and improvements to the Shennecossett golf course (golf course bond ordinance) and referred those proposed improvements to the planning commission in accordance with the town charter and state statutes. Also at the same meeting, the council set a public hearing for an ordinance appropriating $10,388,000 for additions and improvements to the water pollution control authority (sewer bond ordinance) and referred those proposed improvements to the planning commission in accordance with the town charter and state statutes.

Steadman, who participated in the special meeting on June 25, 1996, was not a resident of Groton on that date. The trial court found that "[n]o member of the Town Council was clearly aware of the fact that Bernard W. Steadman was not a resident of Groton on June 25, 1996, nor did the members of the Town Council have sufficient time to conduct a thorough investigation in response to the information obtained by them after reading The [New London] Day article published on June 23, 1996," two days before the special meeting.

That article referred to Steadman's residency.[3] The trial court also found that no other town official had clear information indicating that Steadman was not a resident of the town of Groton on June 25, 1996, and that Steadman had resigned as a councilor effective July 1, 1996.

The plaintiffs brought the present action, seeking temporary and permanent injunctions prohibiting the defendants from implementing the golf course and the sewer bond ordinances.[4] The plaintiffs alleged that although Steadman ceased to be a resident, he continued to sit on the town council, to participate in its deliberations and to vote on items that came before the council. The plaintiffs further alleged that pursuant to the Groton town charter, six council members are necessary for a quorum, and that between January 1 and July 1, 1996, town council meetings were held and business conducted therein at which there would not have been a quorum but for the presence of Steadman. Finally, the plaintiffs alleged that the ordinances, resolutions or votes adopted at the June 25, 1996 special meeting were illegal and, if carried out, would cause large sums of money to be expended by the town of Groton.

---

[3] The trial court found that most of the members of the Groton town council had read an article that appeared in the New London Day on June 23, 1996, which contained the following paragraph: "Steadman is divorced with two grown children. He has been living with friends in Stonington since January 1st, when he sold his house on Dogwood Lane in Mystic."

[4] Specifically, the plaintiffs claimed, inter alia: "1. A temporary and permanent injunction prohibiting and restraining the defendants from implementing or issuing bonds and notes in the sum of $450,000.00 for Shennecossett Golf Course improvements.

"2. A temporary and permanent injunction prohibiting and restraining the defendants from implementing an ordinance appropriating $10,388,000.00 for additions and improvements to the Water Pollution Control Facility and a sewer system evaluation study and authorizing the issue of bonds and notes in the same amount to defray said appropriations.

"3. A temporary and permanent injunction prohibiting and restraining the defendant Town Clerk from authenticating any action of the Town Council unless said action by the Town Council was enacted at a meeting duly held in accordance with the provisions of the Town Charter."

The trial court, following a hearing, denied the plaintiffs' request for injunctive relief, stating in part that "[w]hile it would have been preferable that Mr. Steadman not participate at the June 25, 1996 meeting, no action clearly mandated by the charter was taken at that meeting, and those actions which were clearly mandated by the charter were taken at a later time without the participation of Mr. Steadman. Consequently, the court finds that the ordinances in question are not invalid, legally ineffective or ultra vires." The plaintiffs appeal that decision.

We begin by noting that "[t]he charter or statute by which the municipality is created is its organic act. *Neither the corporation nor its officers can do any act, make any contract, or incur any liability not authorized thereby, or by the legislative act applicable thereto. All acts beyond the scope of the powers granted are void.* Thus, in the exercise of its powers, a municipal corporation is said to be confined to the circumference of those granted and may not travel beyond the scope of its charter or in excess of the granted authority." (Emphasis in original; internal quotation marks omitted.) *Highgate Condominium Assn.* v. *Watertown Fire District*, 210 Conn. 6, 16–17, 553 A.2d 1126 (1989). "[W]here the town charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful." *Miller* v. *Eighth Utilities District*, 179 Conn. 589, 594, 427 A.2d 425 (1980).

According to the plaintiffs, the golf course bond and the sewer bond ordinances are invalid because there was no quorum at the June 25, 1996 special meeting. The plaintiffs rely on § 4.4 of the Groton town charter,[5]

---

[5] Section 4.4, entitled "Meetings; quorum; ordinances and resolutions to be confined to one subject; records," provides as follows: "At the first meeting of the council following the general town election the council shall fix the time and place of its regular meetings and shall provide a method for

which provides in part that "[s]ix (6) members [of the council] shall constitute a quorum, but no ordinance, resolution, or vote, except a vote to adjourn or to fix the time and place of the next meetings, shall be adopted by less than five (5) affirmative votes. . . ." Section 2.7.1 of the Groton town charter provides in part that "[a]ny person ceasing to be a resident or elector of said town shall thereupon cease to hold elective office in the town." Because Steadman was not a resident of the town of Groton on June 25, 1996, the plaintiffs argue that there was no quorum for the June 25, 1996 special meeting and, therefore, the Groton town council had no authority to take the action that it did at that meeting.

The defendants argue, however, that they have complied with all of the steps necessary to pass a valid ordinance that are contained in General Statutes § 7-157[6] and

the calling of special meetings. It shall determine its own rules of procedure, which rules shall provide for petitions for citizens. All meetings of the council for the transaction of business shall be open to the public. Six (6) members shall constitute a quorum, but no ordinance, resolution, or vote, except a vote to adjourn or to fix the time and place of the next meetings, shall be adopted by less than five (5) affirmative votes. All ordinances and resolutions shall be confined to one subject which shall be clearly stated in the title; provided, however, that nothing herein shall prevent the enactment of an ordinance of codification. The council shall keep for public inspection a journal which shall be the official record of its meetings. The record so kept shall be authenticated for each meeting by the signature of the chairman or the clerk, or both."

[6] General Statutes § 7-157, entitled "Publication. Referendum. Publication of Summary," provides in relevant part: "(a) Ordinances may be enacted by the legislative body of any town, city, borough or fire district. Any such ordinance so enacted, except when enacted at a town or district meeting, shall become effective thirty days after publication thereof in some newspaper having a circulation in the municipality in which it was enacted, provided, upon a petition of not less than fifteen per cent of the electors of such municipality filed with the town or borough clerk, as the case may be, within thirty days after the publication of such ordinance, asking that the same be submitted to the voters of such municipality at its next regular or special meeting, it shall be so submitted and in such event shall not become effective unless a majority of the voters voting at such meeting vote in favor thereof. Any ordinance enacted at a town or district meeting shall become effective fifteen days after publication thereof in some newspaper having a circulation

§ 4.6 of the Groton town charter.[7] Specifically, the defendants argue that § 4.6 of the Groton town charter, which provides for public hearings and publication of ordinances, does not specifically require votes to set the date of a public hearing, to publish an ordinance, or for referral of matters to the planning commission. Since that is the only section of the town charter that

in such town or in such district, as the case may be. Cities and other municipalities whose charters provide for the manner in which they may enact ordinances may enact ordinances in such manner. . . ."

[7] Section 4.6 of the Groton town charter, entitled "Public hearing and publication of ordinances," provides in relevant part: "4.6.1 General. At least one public hearing, notice of which shall be given at least five (5) days in advance by publication of the proposed ordinance in a daily newspaper having circulation within said town, shall be held by the town council before any ordinance shall be passed, except an ordinance relating to appointments or designations of officers or to the town council or its procedures. Every ordinance, after passage, shall be given a serial number and be recorded by the town clerk in a book to be kept for that purpose, which shall be properly indexed. Notice of the passage of an ordinance shall be published once in a daily newspaper having circulation in the town. Said notice shall include the title, serial number and complete text of the ordinance, except that if so directed by the town council a description of the ordinance prepared by the town attorney may be substituted for the complete text. Every ordinance, unless it shall specify a later date, shall become effective on the forty-fourth day after publication of the aforesaid notice of passage except any ordinance which requires for passage affirmative action by the town council and the representative town meeting shall become effective on publication of the aforesaid notice. A referendum ordinance passed by the town council and the representative town meeting shall become effective upon approval by a majority of the qualified voters of the town voting at a referendum election. Upon a petition of not less than five (5) percent of the electors of the Town of Groton, filed with the town clerk within forty-four (44) days after publication of any ordinance, asking that the same be submitted to the electors of said Town of Groton at its next regular election or at a special election, it shall be so submitted. Such ordinance shall remain effective unless a majority of the electors voting on such ordinance equal to at least fifteen (15) percent of the electors listed on the last registry list vote against such ordinance. This section shall not apply to any ordinance for which a referendum right exists under any other provision of the Groton Town Charter. The town council shall require the town clerk to mail to each member of the representative town meeting a copy of each ordinance as proposed or adopted by the town council within five (5) business days after filing with the town clerk's office."

deals with the steps necessary to pass a valid ordinance, the defendants claim that a presumption arises that § 4.6 contains *all* of the necessary steps to pass a valid ordinance. According to the defendants, whether there was a quorum for the June 25, 1996 special meeting is irrelevant to the validity of the ordinances because the actions taken at that meeting were unnecessary for the passage of the ordinances. We agree with the defendants.

Section 4.6 of the Groton town charter outlines the steps necessary for the passage of a valid ordinance, specifying the publication and public hearing requirements. The trial court was presented with evidence that the town of Groton complied with all of these steps and, on the basis of that evidence, concluded that "the required public hearings have been duly noticed and held, the matters have been referred and approved by the planning commission, the ordinances have been adopted by legal votes of the town council and the representative town meeting, and the final decision on the matter will be made by the public at the ballot box on November 5."[8]

Specifically, § 4.6 provides in relevant part that "[a]t least one public hearing, notice of which shall be given at least five (5) days in advance by publication of the proposed ordinance in a daily newspaper having circulation within said town, shall be held by the town council before any ordinance shall be passed . . . ." The trial court was presented with the following evidence. On July 3, 1996, in accordance with § 4.6, notices of the proposed ordinances were published in the New London Day. On July 16, 1996, public hearings were held on the proposed ordinances. According to the minutes of the July 16, 1996 meeting, after the public

[8] The trial court rendered its decision on October 31, 1996, denying the injunction. The referendum passed at the November 5, 1996 election.

hearings were closed, the town council discussed the proposed ordinances. Both of the proposed ordinances passed unanimously by a vote of six to zero and were referred to the representative town meeting. On August 14, 1996, the regular representative town meeting took place. According to the minutes of that meeting, with regard to the golf course bond ordinance, the motion to approve the resolution was passed unanimously. With regard to the sewer bond ordinance, the motion to approve the resolution was passed with a vote of twenty-two in favor and eight opposed.

Section 4.6 further provides in relevant part that "[n]otice of the passage of an ordinance shall be published once in a daily newspaper having circulation in the town." The trial court was presented with the following evidence. On August 21, 1996, notice of passage of both ordinances was published in the New London Day. The sewer bond ordinance, however, was further required to be approved by referendum pursuant to § 8.12 of the Groton town charter.[9] As previously noted, the referendum was held on November 5, 1996, and passed.

On the basis of those facts, we agree with the conclusion of the trial court that the ordinances in question

---

[9] Section 8.12 of the Groton town charter, entitled "Borrowing," provides: "The town shall have the power to incur indebtedness by issuing its bonds or notes as provided by the general statutes subject to the limitations thereof and the provisions of this section. The issuance of bonds and notes shall be authorized by ordinance and if any such bond or issuance of notes, except notes in anticipation of taxes to be paid or other revenue to be received within the fiscal year in which issued, shall exceed when authorized the sum of seven hundred fifty thousand dollars ($750,000.00) or which shall, when added to all other bond issues or issuance of notes previously authorized in the same fiscal year bring the total of such bond issues or issuance of notes authorized for that fiscal year to a sum in excess of seven hundred fifty thousand dollars ($750,000.00), said bond issue or issuance of notes shall be approved by referendum vote on voting machines at any regular town, state or special election or at a referendum called for that purpose."

"are not invalid, legally ineffective or ultra vires." As the defendants correctly argue, and as the trial court properly noted, § 4.6 of the Groton town charter does not specifically provide for votes to set the date of a public hearing, to publish an ordinance, or for referral of matters to the planning commission. Because all of the procedures specified by § 4.6 were followed, we conclude that the ordinance was legally adopted. See *State* v. *Gordon*, 143 Conn. 698, 702, 125 A.2d 477 (1956).

The judgment is affirmed.

In this opinion the other judges concurred.