BRUCE BRAZO *v.* REAL ESTATE COMMISSION

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

516

Argued January 5—decision released May 15, 1979

*Charles M. Needle,* for the appellant (plaintiff).

*Timothy O. Fanning,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* for the appellee (defendant).

LONGO, J. This is an appeal from a judgment of the Court of Common Pleas sustaining the decision of the defendant real estate commission (hereinafter the commission) in suspending the plaintiff's license for violations of § 20-328-3 of the commission's regulations and § 20-320 (11) of the General Statutes. The regulation provides: "No licensee shall negotiate or attempt to negotiate the sale, exchange or lease of any real property directly with an owner or lessor knowing that such owner or lessor has an outstanding exclusive listing contract with another licensee covering the same property." Section 20-320 (11) of the General Statutes provides the commission with the power to suspend temporarily or revoke permanently any license because of the dishonest, fraudulent or improper conduct of a real estate licensee.

The material facts necessary to the disposition of this appeal are substantially undisputed. The plaintiff, Bruce Brazo, is a real estate broker in the town of Wilton. In April, 1975, Leigh Pyne contacted Brazo and informed him that he, Pyne, had executed a "sole agency" listing agreement for the sale of his property with the Peter W. R. Johnson Agency, the complainant before the commission. Under the agreement, Pyne was permitted to sell the property himself without incurring any commission obligation. Brazo initially responded that, under the above circumstances, he would not represent Pyne, and refused to act as Pyne's broker. Subsequently, however, Brazo contacted certain builders with whom he negotiated an agreement with Pyne to purchase 6.37 acres of the 10.98 acre parcel of land for a housing development. The commission for the sale and purchase was paid to Brazo by the purchasers pursuant to the agreement.

Upon learning of the transaction, Johnson filed a formal complaint against the plaintiff with the commission. Johnson testified at the hearing that Pyne had an exclusive agency listing with him, in which Pyne had reserved to himself the right to sell. The plaintiff testified that he sought the advice of his attorney as to whether he could represent the buyers of the property, and that he was advised that he had acted properly and had every right to do so. As a result of its findings, the commission concluded that the plaintiff negotiated the sale of the property directly with the owner, knowing that the owner had an exclusive listing contract with the Johnson Agency covering the property, and that the plaintiff's participation in the sale constituted improper conduct. Following the contested hearing, the plain-

tiff's broker's license was suspended for thirty days for violation of § 20-328-3 of the regulations and for thirty days for violation of § 20-320 (11) of the General Statutes. Upon appeal, the trial court reviewed the record and concluded that the evidence presented before the commission reasonably supported the commission's decision and dismissed the plaintiff's appeal.

In his first assignment of error, the plaintiff claims that the notice of the hearing before the commission failed to meet the requirements of § 4-177 (b) (2) of the General Statutes, rendering the action of the commission null and void. That section requires that notice of a hearing in a contested case include a statement of the legal authority and jurisdiction under which the hearing is to be held. While it is well established that compliance with statutory provisions as to notice is a prerequisite to any valid action by an administrative tribunal; *Mauriello* v. *Board of Education,* 176 Conn. 466, 471, 408 A.2d 247 (1979); *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552 (1955); *Couch* v. *Zoning Commission,* 141 Conn. 349, 356, 106 A.2d 173 (1954); and that failure to give proper notice constitutes a jurisdictional defect; *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201 (1951); the commission's notice clearly informed the plaintiff that he was being summoned for alleged violations of § 20-320 (11) of the General Statutes and § 20-328-3 of the commission regulations, and the notice detailed the facts supporting those allegations. More importantly, and dispositive of the plaintiff's claim, the commission made reference to § 20-321 of the General Statutes, which specifically provides the commission with jurisdiction to conduct a hearing prior to the sus-

pension or revocation of a real estate broker's license. We find that the specific reference to the statutory and regulatory provisions adverted to above sufficiently complied with the notice provisions of General Statutes § 4-177 (b) (2). The principal issue before the commission was simply whether the plaintiff negotiated the sale of land with Pyne, knowing that Pyne had an outstanding exclusive agency listing with another broker covering the same property. Both the record and the transcript reveal manifestly that Brazo knew what charges had been brought against him and knew precisely upon what factors he could predicate a defense. In such circumstances, it is inappropriate for this court to indulge in a microscopic search for technical infirmities in the commission's action: to do so would hamper the legitimate activities of the commission in investigating complaints such as that presently involved. See *Silver Lane Pickle Co.* v. *Zoning Board of Appeals,* 143 Conn. 316, 319, 122 A.2d 218 (1956); *Couch* v. *Zoning Commission,* supra, 358. Moreover, as Brazo was notified of specific allegations concerning his misconduct, and was in no way prejudiced by the notice given, the notice cannot be said to be deficient. *Board of Education* v. *Commission on Human Rights & Opportunities,* 177 Conn. 75, 77, 411 A.2d 40 (1979); *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 375, 355 A.2d 265 (1974); *Conley* v. *Board of Education,* 143 Conn. 488, 494, 123 A.2d 747 (1956).

The plaintiff next contends that the statutory prerequisites for a violation of General Statutes § 20-320 (11) were not met. The commission may, pursuant to that statute, investigate the actions of any real estate broker in connection with specific

allegations of the types of misconduct enumerated in the statute. The plaintiff argues that because no verified complaint was filed by the Johnson Agency, and as the commission did not act "on its own motion" in investigating the plaintiff's actions, the commission's action was a nullity. The plaintiff further asserts that the intention behind the statute is that *before* a hearing is held on the revocation or suspension of a broker's license, the commission must develop a prima facie case of wrongdoing against the broker. The short answer to these arguments is that it does not appear on the record that the plaintiff distinctly raised this claim either before the commission, or in his appeal to the Court of Common Pleas. Obviously, without raising the issue below, it could not have been decided adversely to the plaintiff. In such circumstances, we are not required to address this claim of error. Practice Book, 1978, § 3063; *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 71, 381 A.2d 559 (1977); *Robinson* v. *Faulkner,* 163 Conn. 365, 378, 306 A.2d 857 (1972); *Martin* v. *Kavanewsky,* 157 Conn. 514, 520, 255 A.2d 619 (1969).

Notwithstanding the above, even if the plaintiff's claim regarding the statute is viewed as jurisdictional in nature, which claim may be raised in this court for the first time; *White* v. *Planning & Zoning Commission,* 149 Conn. 746, 747, 183 A.2d 749 (1962); the argument fails on its merits. Although the complaint filed against the plaintiff was not verified, it clearly made out a prima facie case of misconduct on his part. The statute, moreover, authorizes the commission "upon its own motion" to investigate the alleged misconduct of a licensee. In these circumstances, we reject the plaintiff's claim that this phrase in the statute requires the commission, *prior*

to a statutory, evidentiary hearing, to develop affirmatively a prima facie case of improper conduct against a licensee. Nothing in the legislative history concerning § 20-320 suggests that the commission's investigation process may not, in the absence of a verified complaint, be initiated by the convening of a statutory hearing, upon the motion of the commission, to investigate allegations of misconduct. See Hearings before Joint Standing Committee on the Judiciary, Pt. 1, 1955 Sess., p. 130 (prior to enactment of Public Acts 1955, No. 123). To hold, as the plaintiff urges, that a prima facie case must be formulated by the commission against a broker, *prior* to a hearing on allegations of misconduct, would unduly restrict the ability of the commission to achieve its purpose in ensuring that the public deal with honest, truthful and competent real estate brokers. See 5 H.R. Proc., Pt. 6, 1953 Sess., p. 2381 (remarks of Representative Norman King Parsells).

The plaintiff argues next that he could not have been found to have violated § 20-328-3 of the commission regulations, claiming that the exclusive agency listing agreement between Pyne and the Johnson Agency did not comply with the requirements of commission regulation § 20-328-1.[1] We find no merit to this claim. Neither the commission nor the trial court found that the agreement was invalid. The agreement complied with the requirements of regulation § 20-328-1, in that it (1) was in writing;

---

[1] Section 20-328-1 of the Regulations of Connecticut State Agencies provides: "LISTING AGREEMENTS. All listing agreements shall be in writing, properly identifying the property and containing all the terms and conditions of the sale, including the commission to be paid, the expiration date, and the signatures of all parties concerned. An exclusive agency listing or exclusive right to sell listing shall be clearly indicated in the listing agreement."

(2) identified the location and ownership of the property; (3) contained the terms of the sale, including the commission to be paid; (4) included the listing and expiration dates of the agreement; (5) contained the signatures of the parties concerned; and (6) stated that the listing was exclusive.

The plaintiff's primary argument appears to be that the entire parcel of land in question contained 10.98 acres, while the listing agreement specified that only four acres were to be sold by Johnson. Thus, the plaintiff argues, the simple reference to "four acres" did not meet the requirement of "proper identification" of the property as set forth in commission regulation 20-328-1. We do not agree. The listing agreement stated, in part, the following: "I wish to list *my property located at 123 Olmstead Hill Road,* Wilton, Ct. consisting of 4 acres of land . . . ." (Emphasis added.) The controlling language "my property located at 123 Olmstead Hill Road, Wilton, Ct." identifies the location and ownership of the land in a sufficient manner, as required by regulation § 20-328-1. A description of property in a listing agreement need not be stated as definitely and completely as in a contract for the sale of land within the Statute of Frauds (General Statutes § 52-550) since, in this state, a contract employing a broker to sell land is not within the Statute of Frauds. *Stagg* v. *Lawton,* 133 Conn. 203, 209, 49 A.2d 599 (1946); *Cone* v. *Pedersen,* 131 Conn. 374, 377, 40 A.2d 274 (1944); *Rathbun* v. *McLay,* 76 Conn. 308, 310, 56 A. 511 (1903). Under § 20-328-1 of the commission regulations, which requires that a listing agreement "properly [identify] the property," a listing agreement which describes the property by reference to its ownership, location and approximate size sufficiently describes the property.

See *Central Idaho Agency, Inc.* v. *Turner,* 92 Idaho 306, 442 P.2d 442 (1968); 12 Am. Jur. 2d, Brokers § 46; annot., 30 A.L.R.3d 935, §§ 6, 9, 10 (a), 11 (a); see especially *Orr* v. *Smith,* 102 Ga. App. 40, 115 S.E.2d 601 (1960) (under Georgia law, which, like Connecticut, states that a contract listing real property for sale with a broker does not come within Statute of Frauds, held: the majority of jurisdictions adhere to the rule that a land description in a broker's contract need only show that the property attempted to be described in the contract is the same property intended to be listed by the owner). Moreover, there is no evidence in the record to indicate that at the time the plaintiff negotiated the sale of the property, he was aware of the specific contents of the listing agreement between Pyne and the Johnson Agency; thus, he cannot legitimately argue that his actions at the time were based upon an honest belief that something less than all of Pyne's property was subject to the exclusive listing. We thus find that the Pyne property was identified sufficiently to comply with § 20-328-1 of the commission regulations.[2]

The plaintiff's fourth claim is that commission regulation § 20-328-3 does not apply to a situation where an owner retains the right to sell and that, if it is construed so to apply, the regulation exceeds the legislative grant of authority to the commis-

---

[2] The plaintiff makes a second claim to bolster his present argument: that the listing agreement did not satisfy commission regulation § 20-328-1 in that it failed to set forth the fact that Pyne retained a right to sell. Consequently, it is argued, alternatively, either that the agreement failed to include "all the terms and conditions of the sale" in violation of that section, or that, in fact, the agreement was not an exclusive agency listing agreement, thus allowing the plaintiff to negotiate the sale of the property. We disagree. "During the term of an 'exclusive agency listing' agreement, the

sion, and is thus void. The plaintiff's claim appears to be that it was not incumbent upon him to deal through the Johnson Agency when the owner retained the right to sell, and that § 20-328-3 precluded him only from acting as a broker for the *owner* Pyne, and not for prospective purchasers. As we have indicated, however (note 2, supra), while an exclusive agency listing is in effect, the contracting real estate agent is the *only agent* having a right to sell the property; hence, the Johnson Agency was the only party authorized to sell the Pyne property. That the owner retains the right to sell does not change this result. Under an exclusive agency listing, if a broker is involved in the sale of the subject property, he must be the owner's exclusive broker. Commission regulation § 20-328-3 clearly prohibits another broker from negotiating or even attempting to negotiate a sale of property subject to an exclusive agency listing directly with an owner knowing of the existence of an outstanding exclusive agency listing contract.

Neither do we find that the regulation exceeds the legislative grant of power to the commission. The legislative grant of power for § 20-328-3 is found in General Statutes § 20-328: "The commission may make and enforce such reasonable regulations as it deems necessary relating to . . . the manner in which licensed brokers or salesmen shall conduct

---

contracting real estate agent is the only agent having a right to sell the property. The owner, however, retains the right to sell without incurring a commission." *Colli* v. *Real Estate Commission,* 169 Conn. 445, 446–47, 364 A.2d 167 (1975); *Harris* v. *McPherson,* 97 Conn. 164, 167, 115 A. 723 (1922); cf. *Covino* v. *Pfeffer,* 160 Conn. 212, 214–15, 276 A.2d 895 (1970). It was not necessary for the agreement, in law an exclusive agency listing, to set forth the retained right of the owner to sell the property. The agreement was a valid exclusive agency listing agreement under § 20-328-1 of the regulations.

the real estate business." The regulation is clearly valid within the context of this broad legislative grant of power. *Colli* v. *Real Estate Commission,* 169 Conn. 445, 450, 364 A.2d 167 (1975). The plaintiff's claim that the regulation impairs his right to a contract and violates the due process clause is similarly without merit. Although the right to make contracts has long been embraced in the concept of liberty under the due process clause; *Allgeyer* v. *Louisiana,* 165 U.S. 578, 17 S. Ct. 427, 41 L. Ed. 832 (1897); the freedom to contract is a right qualified by the legitimate supervision of the legislature. *Cyphers* v. *Allyn,* 142 Conn. 699, 705, 118 A.2d 318 (1955). "Liberty" implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. "[N]either the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the . . . general welfare of the community." *Atlantic Coast Line R. Co.* v. *Goldsboro,* 232 U.S. 548, 558, 34 S. Ct. 364, 58 L. Ed. 721 (1914); *Elida, Inc.* v. *Harmor Realty Corporation,* 177 Conn. 218, 223, 413 A.2d 1226 (1979); *Ansonia* v. *Ansonia Water Co.,* 101 Conn. 151, 157, 125 A. 474 (1924). Here, the regulation does not impair Brazo's right to contract.

The plaintiff's final claim is that his license was improperly suspended for *two* thirty-day periods, one for a violation of commission regulation § 20-328-3 and one for a violation of General Statutes § 20-320 (11), in that this multiple penalty arose from the same conduct, thereby violating the

"rule against multiplicity."[3] Multiplicity of punishment for a single act is generally an issue in the criminal law; proceedings to revoke a broker's license are, however, penal in nature; *Fitzpatrick's Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 416, 419, 334 A.2d 476 (1973); *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265 (1970); see 51 Am. Jur. 2d, Licenses and Permits § 58; and considerations of multiple punishment for the same conduct are applicable.

It cannot be disputed that the plaintiff's single act—negotiating the sale of the Pyne property— gave rise to two, consecutive thirty-day suspensions of his license. This is not a case where a single act combined the elements of two or more distinct offenses; in such a case, a penalty for each offense is appropriate. *State* v. *Andrews,* 108 Conn. 209, 215, 142 A. 840 (1928). Neither is this a case where proof of additional factors disclosing separate violations of the statute and the regulation would warrant separate penalties. Cf. *State* v. *Brown,* 173 Conn. 254, 258, 377 A.2d 268 (1977). "The applicable rule is that where the same act or transaction

---

[3] The "rule against multiplicity" has its origin in the criminal law. It has been defined as the charging of a single offense in multiple counts, leaving a criminal defendant open to multiple punishments for offenses growing out of the same transaction. See 1 Wright, Federal Practice and Procedure, § 142; 8 Moore, Federal Practice, ¶ 8.03 (2); 1 Wharton, Criminal Law (11th Ed.) § 34; 21 Am. Jur. 2d, Criminal Law § 189; see, e.g. *Ladner* v. *United States,* 358 U.S. 169, 173, 79 S. Ct. 209, 3 L. Ed. 2d 199 (1958); *United States* v. *Lubomski,* 277 F. Supp. 713, 716 (N.D. Ill., 1967). Each criminal activity may be prosecuted as a separate offense if "separate acts have been committed with the requisite criminal intent." *Morgan* v. *Devine,* 237 U.S. 632, 640, 35 S. Ct. 712, 59 L. Ed. 1153 (1915). The "rule," however, prohibits multiple punishment for an act which is, in law, but a single, criminal occurrence. See *United States* v. *Michelson,* 165 F.2d 732, 733, (2 Cir.), aff'd, 335 U.S. 469, 69 S. Ct. 213, 93 L. Ed. 168 (1948).

constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) ; 1 Wharton, Criminal Law (11th Ed.) § 34. Here, having violated § 20-328-3 of the commission regulations, no "additional proof" was required to show that the plaintiff engaged in "dishonest, fraudulent or improper dealings" within § 20-320 (11) of the General Statutes. The commission, therefore, acted improperly in suspending the plaintiff's broker's license for two consecutive periods; only one suspension was warranted under the facts of this case.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment as on file except as modified in accordance with this opinion.

In this opinion the other judges concurred.