JEFFREY W. MOBLEY ET AL. *v.* METRO MOBILE CTS
OF FAIRFIELD COUNTY, INC., ET AL.
(13761)
(13794)

SHEA, CALLAHAN, GLASS, COVELLO and BORDEN, Js.

Argued June 1—decision released July 31, 1990

*Steven R. Humphrey,* with whom were *Raymond T. DeMeo* and, on the brief, *Sally S. King,* for the appellant (named defendant).

*Phyllis E. Lemell,* assistant attorney general, with whom, on the brief, was *Clarine Nardi Riddle,* attorney general, for the appellant (defendant Connecticut Siting Council).

*Robert M. Davidson,* with whom was *Jessie F. Bennett,* for the appellees (plaintiffs).

GLASS, J. The defendant Connecticut Siting Council (Council)[1] issued a certificate of environmental compatibility and public need (certificate) to the named defendant, Metro Mobile CTS of Fairfield County, Inc. (Metro Mobile), that authorized Metro Mobile to construct a cellular telecommunications antenna tower (tower) on property leased by Metro Mobile in Greenwich. The plaintiffs, Jeffrey W. Mobley and Susan R. Mobley, owners of property allegedly abutting the tower site, were granted a temporary and permanent injunction by the trial court enjoining Metro Mobile from the construction of the tower.[2] This appeal followed. We reverse.

---

[1] The Council is the state agency that oversees, inter alia, the location, design, construction and maintenance of cellular telephone transmission facilities. See General Statutes § 16-50j.

[2] The trial court also granted the plaintiffs' request for a temporary and permanent injunction against the Council, requiring the revocation of Metro Mobile's certificate.

Most of the relevant facts essential for the disposition of this matter are stipulated or undisputed. Metro Mobile is one of two entities authorized by the federal communications commission to provide cellular telephone service in Fairfield county. On October 13, 1987, Metro Mobile applied to the Council for a certificate. In its application, Metro Mobile requested permission to construct cellular telephone transmission facilities at seven proposed sites in the towns of Fairfield, Greenwich and Wilton. Only one of those sites, the so-called AC/A Greenwich site, is at issue in this appeal.

Pursuant to General Statutes § 16-50*l* (b),[3] on October 3 and 5, 1987, Metro Mobile gave notice by certi-

---

[3] "[General Statutes] Sec. 16-50*l*. APPLICATION FOR CERTIFICATE. NOTICE. APPLICATION OR RESOLUTION FOR AMENDMENT OF CERTIFICATE. . . .

"(b) Each application shall be accompanied by proof of service of a copy of such application on: (A) Each municipality in which any portion of such facility is to be located, both as primarily proposed and in the alternative locations listed, which copy shall be served on the chief executive officer of the municipality and shall include notice of the date on or about which the application is to be filed, and the zoning commissions, planning commissions, planning and zoning commissions, conservation commissions and inland wetlands agencies of each such municipality, and the regional planning agencies which encompass each such municipality; (B) the attorney general; (C) each member of the legislature in whose assembly or senate district the facility or any alternative location listed in the application is to be located; (D) any agency, department or instrumentality of the federal government that has jurisdiction, whether concurrent with the state or otherwise, over any matter that would be affected by such facility; (E) each state department, agency and commission named in subsection (g) of section 16-50j; and (F) such other state and municipal bodies as the council may by regulation designate. A notice of such application shall be given to the general public, in municipalities entitled to receive notice under subdivision (A) of this subsection, by the publication of a summary of such application and the date on or about which it will be filed. Such notice shall be published under the regulations to be promulgated by the council, in such form and in such newspapers as will serve substantially to inform the public of such application and to afford interested persons sufficient time to prepare for and to be heard at the hearing prescribed in section 16-50m. Such notice shall be published in not less than ten point, boldface type. A notice of such an application for a certificate for a facility described in subdivision (3), (4), (5) or (6) of subsection (a) of section 16-50i shall also be

fied mail of its intent to file an application for approval of its proposed construction sites. Notice was sent to sixty-eight property owners in the vicinity of the proposed tower sites as reflected by the town land records on September 15, 1987. The plaintiffs acquired title to their property on September 21, 1987, and their deed was recorded in the Greenwich town hall on the same day. As of September 15, 1987, the predecessor in title to the plaintiffs' property was Hillsbury Builders, Inc., which received a certified mail notice sent by Metro Mobile on October 3, 1987. Metro Mobile did not send the plaintiffs notice by certified mail of its intent to file an application with the Council. Metro Mobile published notice of its application in The Stamford Advocate, on October 6 and 8, 1987, and in the Greenwich Time on October 17 and 19, 1987. Pursuant to General Statutes § 16-50m,[4] on November 11, 1987, the Council pub-

sent, by certified or registered mail, to each person appearing of record as an owner of property which abuts the proposed primary or alternative sites on which the facility would be located. Such notice shall be sent at the same time that notice of such application is given to the general public." This subsection was amended, effective May 2, 1989, by Public Acts 1989, No. 89-45, §§ 2, 4.

[4] "[General Statutes] Sec. 16-50m. PUBLIC HEARING. NOTICE. (a) Upon the receipt of an application for a certificate complying with section 16-50*l*, the council shall promptly fix a commencement date and location for a public hearing thereon not less than thirty days nor more than one hundred fifty days after such receipt. At least one session of such hearing shall be held after six-thirty p.m. for the convenience of the general public. Such hearing shall be held at a location selected by the council, in the county in which the facility or any part thereof is to be located. If the proposed facility is to be located in more than one county, the council shall fix the location for a public hearing in whichever county it determines is most appropriate, provided the council may hold hearings in more than one county.

"(b) (1) The council shall hold a hearing on an application for an amendment of a certificate not less than thirty days nor more than sixty days after receipt of the application in the same manner as a hearing is held on an application for a certificate if, in the opinion of the council, the change to be authorized in the facility would result in any material increase in any environmental impact of such facility or would result in a substantial change in the location of all or a portion of the facility, other than as provided in the alternatives set forth in the original application for the certificate, pro-

lished notice of the date, time and location of the hearing on Metro Mobile's application, in The Stamford Advocate, the Greenwich Time and the Bridgeport Post. The Council also mailed notice of the date, time and location of the hearing to the persons entitled to receive a copy of the application under § 16-50m (c). As agreed in the stipulation on file, the plaintiffs were not entitled to be sent notice of the hearing by mail from the Council under § 16-50m (c) as such notification is required only for those named in § 16-50*l* upon whom service of a copy of the application must be made. The public hearing on Metro Mobile's application was held on December 14 and 21, 1987, at the times and places specified in the notice of the hearing. On February 19, 1988, the Council issued a certificate to Metro Mobile that authorized it to construct a cellular telecommunications tower facility on the Greenwich AC/A site.

vided the council may, in its discretion, return without prejudice an application for an amendment of a certificate to the applicant with a statement of the reasons for such return. (2) The council may hold a hearing on a resolution for amendment of a certificate not less than thirty days nor more than sixty days after adoption of the resolution in the same manner as provided in subsection (a) of this section. The council shall hold a hearing if a request for a hearing is received from the certificate holder or from a person entitled to be a party to the proceedings within twenty days after publication of notice of the resolution. Such hearing shall be held not less than thirty days nor more than sixty days after the receipt of such request in the same manner as provided in subsection (a) of this section. (3) The county in which the facility is deemed to be located for purposes of a hearing under this subsection shall be the county in which the portion of the facility proposed for modification is located.

"(c) The council shall cause notices of the date and location of each hearing to be mailed, within one week of the fixing of the date and location, to the applicant and each person entitled under section 16-50*l* to receive a copy of the application or resolution. The general notice to the public shall be published in not less than ten point, boldface type.

"(d) Hearings, including general hearings on issues which may be common to more than one application, may be held before a majority of the members of the council.

"(e) During any hearing on an application or resolution held pursuant to this section, the council may take notice of any facts found at a general hearing."

On June 29, 1988, approximately four months after the Council had issued a certificate to Metro Mobile, the plaintiffs filed an application for an ex parte temporary injunction to enjoin Metro Mobile from constructing the tower. At the time of the plaintiffs' application, Metro Mobile had already begun construction of the tower's foundation. The application for an ex parte restraining order was denied and the trial court ordered that the defendants be served with the writ, summons, complaint and related papers by June 30, 1988, and that the parties appear in court on July 5, 1988. The trial court held a chambers conference on July 5, 1988, and ordered the parties to file briefs. Construction of the tower was completed by July 14, 1988.

During July and August, 1988, the parties filed memoranda of fact and law and another chambers conference was held on August 16, 1988. Metro Mobile moved to dismiss the action, claiming that the trial court lacked subject matter jurisdiction. Metro Mobile argued that since the Council has exclusive jurisdiction over the approval of a cellular telephone tower, the power of the Superior Court is limited to hearing an administrative appeal from a decision of the Council. Metro Mobile argued further that the "plaintiffs ha[d] no independent right to [attack collaterally,] in a separate suit, the jurisdiction, actions and procedures of the Siting Council or to prosecute an independent action to seek to enjoin [its] construction of the cellular tower." The court, however, by a memorandum of decision dated September 8, 1988, ruled that "the failure by defendants to give plaintiffs proper notice constitute[d] a violation of plaintiffs' constitutional rights and, therefore, plaintiffs [were] irreparably injured." Thus, the court held that the Council was without jurisdiction to issue Metro Mobile's certificate, and therefore granted the plaintiffs' application for a temporary injunction.

On October 11, 1988, Metro Mobile moved to dissolve the temporary injunction and requested a hearing on the plaintiffs' request for a permanent injunction. On December 20, 1988, the court heard arguments on the plaintiffs' request for a permanent injunction and Metro Mobile's motion for the dissolution of the temporary injunction. On May 2, 1989, the court "adjudged that a permanent injunction be entered ordering [Metro Mobile] to restore the property to its original condition and that a stay of said permanent injunction be entered pending the appeal of this matter." Thereafter, on May 18, 1989, Metro Mobile appealed to the Appellate Court from the judgment rendered by the trial court, and, pursuant to Practice Book § 4023, this court transferred the case to itself.

On appeal, Metro Mobile argues: (1) that the trial court should not have concluded that the Council lacked jurisdiction to hear and decide its application for a certificate; (2) that the trial court should not have concluded that the plaintiffs' rights to due process of law were violated; (3) that even if it were assumed that the plaintiffs were "record owners," their property did not "abut" the proposed site and they were therefore not entitled to notice pursuant to General Statutes § 16-50*l*; (4) that the trial court should not have granted a permanent injunction directing Metro Mobile to dismantle its cellular telephone tower, a form of relief that the plaintiffs had not requested and that the trial court had no authority to grant; (5) that the trial court failed to balance the hardship to Metro Mobile claimed by the plaintiffs against the substantial hardship involved in dismantling its cellular telephone tower and facilities; and (6) that its rights to due process of law as guaranteed by article first, § 10, of the Connecticut constitution and by the fourteenth amendment to the United States constitution were violated by the trial court's

refusal to allow it to be heard and present evidence in opposition to the plaintiffs' request for a temporary or permanent injunction.[5]

The trial court found that the plaintiffs' property abuts the tower site property, and, therefore, that the plaintiffs were entitled to receive notice of Metro Mobile's application for a certificate by certified or registered mail as provided under § 16-50*l* (b). The court further concluded that Metro Mobile's failure to give the plaintiffs certified or registered mail notice "constitute[d] a violation of [the plaintiffs'] constitutional rights, and therefore rendered the Siting Council without jurisdiction to issue Metro Mobile's certificate." Because we do not agree that the plaintiffs' due process rights were violated we conclude that the Council properly had jurisdiction to issue Metro Mobile its certificate. Therefore, it is unnecessary for us to consider the defendants' other claims since there was no appeal by the plaintiffs from the action of the Council.

Under § 16-50*l* (b), an application for a certificate must be accompanied by proof of service of a copy of the application on specified municipal and state agencies and officials designated in parts A through F of the statute. Additionally, notice of such application must be given to the general public by publication, in the form prescribed by the Council's regulations, in such newspapers as will substantially inform the public of the application. At the same time that notice of the application is given to the general public by publi-

---

[5] The Council filed a motion to file an untimely appeal on June 28, 1989, which this court granted on September 27, 1989. In accordance with that order, the Council filed its appeal on October 6, 1989, which was assigned Supreme Court Docket No. 13794. On appeal, the Council argues that the trial court incorrectly found that the Council lacked jurisdiction as a result of defective notice. Thus, our disposition of Metro Mobile's appeal is necessarily dispositive of the Council's appeal.

cation, "[a] notice of such an application for a certificate . . . shall also be sent, by certified or registered mail, to each person appearing of record as an owner of property which abuts the proposed primary or alternative sites on which the facility would be located."

The plaintiffs do not claim that they were entitled to receive a copy of the application as required by § 16-50*l* for designated municipal and state agencies and officials, nor do the plaintiffs claim that they did not receive the notice given to the general public by publication. Similarly, they do not claim that the notice by publication given by the Council was improper. Nor is there any claim of impropriety in the mailing by the Council of the notice of the hearing to the applicant and each person entitled to receive a copy of the application under § 16-50*l* (b) (A) through (F).

We agree with the argument of the Council that the only notice of constitutional dimension in this case is the notice of the *hearing,* not the notice of the filing of the application. If it is assumed for the sake of argument that the plaintiffs were abutters within the meaning of § 16-50*l*, and that they were thereby entitled to notice of the filing of the application, the only notice that the plaintiffs did not receive that they were entitled to receive was notice of the filing of the application.

Therefore, under the facts of this case, the plaintiffs' collateral attack on the Council's action could only succeed if the Council lacked subject matter jurisdiction because the plaintiffs were deprived of some notice granted them by the principles of due process of law. The purpose of such constitutional notice " 'is to advise all affected parties of their opportunity to be heard and to be apprised of the relief sought.' " *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721 (1971); see also *Wright*

v. *Zoning Board of Appeals,* 174 Conn. 488, 491, 391 A.2d 146 (1978); *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 369–70, 362 A.2d 519 (1975); *Schwartz* v. *Hamden,* 168 Conn. 8, 14, 357 A.2d 488 (1975); *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 47, 301 A.2d 244 (1972). That required notice, however, has traditionally been held to apply to notice of the hearing. See *Cavallaro* v. *Durham,* 190 Conn. 746, 462 A.2d 1042 (1983); *Brazo* v. *Real Estate Commission,* 177 Conn. 515, 518, 418 A.2d 883 (1979); *Leib* v. *Board of Examiners for Nursing,* 177 Conn. 78, 83, 411 A.2d 42 (1979); *Murphy* v. *Board of Education,* 167 Conn. 368, 375, 355 A.2d 265 (1974); *Hartford Electric Light Co.* v. *Water Resources Commission,* supra; *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 693, 137 A.2d 542 (1957); *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552 (1955); *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201 (1951). It does not extend to notice of a prehearing application as well.

All of the cases cited by the plaintiffs for the proposition that the failure to comply with the notice requirement of § 16-50*l* was a jurisdictional defect involved notice of a hearing. See *Hartford Electric Light Co.* v. *Water Resources Commission,* supra; *Smith* v. *F. W. Woolworth Co.,* supra. None involved, as here, a statutory notice of the filing of an application.[6] Moreover, the mere fact that the plaintiffs were abutters, as has been assumed, gave them no significant interest protected by the due process clause and did not entitle

---

[6] The cases cited by the plaintiffs; *Invisible Empire* v. *West Haven,* 600 F. Sup. 1427 (D. Conn. 1985); *Westinghouse Broadcasting Co.* v. *Dukakis,* 409 F. Sup. 895 (D. Mass. 1976); *Borreca* v. *Fasi,* 369 F. Sup. 906 (D. Hawaii 1974); *Cologne* v. *West Farms Associates,* 37 Conn. Sup. 90, 442 A.2d 471 (1982); do not involve a failure to give notice of any kind of agency action.

them to more than published notice of the hearing. *Fusco* v. *State,* 815 F.2d 201 (2d Cir. 1987).

The judgment of the trial court is reversed.

In this opinion the other justices concurred.