[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. NATURE OF THE PROCEEDINGS
This is an administrative appeal from a final decision of the Commissioner of the Department of Motor Vehicles, the defendant herein, ordering the suspension of the plaintiff's operator's license for a period of ninety (90) days in accordance with Conn. CT Page 1457 Acts 89-314, which authorizes certain administrative "per se" license suspensions. A hearing was held before the defendant on February 8, 1990. The defendant rendered the decision on February 9, 1990, effective February 8, 1990.
The instant appeal was filed on March 1, 1990. A hearing was held before this Court on August 9, 1990. For the reasons stated below, the appeal is dismissed.
II. STATEMENT OF FACTS[1]
On January 4, 1990, at 10:23 P.M., Officer Michael D'Amato of the East Haven Police Department observed the plaintiff's car on a road in New Haven crossing the yellow line and pulling back into its lane as it continued westward toward New Haven. When this happened several times, the officer turned on his overhead lights and siren. The plaintiff pulled over to the side of the road but continued to drive several blocks before finally stopping. As the officer approached the plaintiff's car, he smelled a strong odor of alcohol coming from it. He noticed the plaintiff operator's eyes were "very glassy" and his clothes were in a "sloppy" condition. He also noticed two brown bags in the backseat, both of which were open and in plain view. One of the bags contained several empty beer cans, while the other one was full of unopened ones.
The officer asked to see the plaintiff's papers. The plaintiff had a great difficulty getting his license out and even dropped all the contents of the wallet on the floor of the car at one point. The officer then asked the plaintiff to step out of the car. The plaintiff complied but had to support himself on the open door to avoid falling down. The plaintiff agreed to take the field sobriety tests. He almost fell to the side several times in performing the heel-to-toe test, however, and could not recite the alphabet correctly either. Thereupon, the officer placed him under arrest for driving under the influence of alcohol. He then transported him to the East Haven police headquarters, where the plaintiff was read his rights, which the latter stated he understood. The plaintiff declined to call an attorney and agreed to take the breathalyzer test. The test was administered in North Branford, however, since the intoximeter at East Haven was not working properly. Two tests were administered, the results of which were .265 and .250, respectively, well above the limit specified by law.[2]
The plaintiff was brought back to East Haven, where his Connecticut license was seized and a temporary license was issued. A hearing was held before an administrative law judge on February 8, 1990. The inquiry was limited to a determination of the four issued specified by Conn. Acts 89-314.[3] The adjudicator found CT Page 1458 against the plaintiff on all four of these issues and thereafter suspended his operator's license for ninety days in accordance with the Public Act. The present appeal followed.
III. ISSUES PRESENTED BY THE APPEAL
The plaintiff raises three issues on appeal. First, he claims that the lack of a current recertification of the testing instrument rendered the test invalid. Second, he argues that the testing instrument had not been checked for accuracy at the beginning or before the end of the shift and therefore the test was not valid. Finally, he claims that the witnessing officer's administering his own oath and taking the oath of the testing officer when not in his presence is in violation of Conn. Agencies Regs. 14-227b-10 (1990).[4]
IV. DISCUSSION
This Court has limited authority to review the findings of the adjudicator. The parameters of this review have been stated in Buckley v. Muzio, 200 Conn. 1 (1986):
 The hearing is expressly limited to the four issues enumerated above. . . . [T]he limited issue before the trial court was whether the adjudicator properly applied the statute as written to the facts of the case. The trial court's memorandum of decision clearly indicates that the adjudicator made the findings required by General Statutes 14-227b(d). Having nothing more to determine, it was "inappropriate for [the trial court] to indulge in a microscopic search for technical infirmities in the [commissioner's] action. . . ." Brazo v. Real Estate Commission, 177 Conn. 515, 519, 418 A.2d 883 (1979).
200 Conn. at 7 (emphasis in original).
It must be noted, however, that the four issues set forth in the statute in force at the time of Buckley did not involve the determination of a specific percentage of alcohol in the blood, as the third of those issues now does by virtue of Conn. Acts 89-314 1(f).[5] Since the accuracy of the determination of that percentage depends directly on the accuracy of the testing instrument itself, it is appropriate for this Court to examine the plaintiff's first two claims. Whether the plaintiff's third claim is similarly reviewable is more doubtful, however, since it does not obviously fit within any of the four issues enumerated in the Public Act and was not properly raised below. In the interest of justice, however, this Court will examine the third claim to some extent. CT Page 1459
A. Lack of a Current Recertification of Intoximeter 3000
The plaintiff claims that the test should be invalidated because the testing instrument had not been recertified since June of 1988. The plaintiff bases his claim on the purported testimony of Officer Popolizio of the North Branford Police Department that the Intoximeter should be certified on an annual basis. See Plaintiff's Brief at 6. However, the transcript does not corroborate this assertion. Rather, it shows that the officer only believed that the equipment is, as opposed to should be, certified annually. See Transcript at 5. Indeed, when the plaintiff's attorney tried to ask another question in the same connection, the officer clearly stated that he was "not responsible for the record keeping at that unit," indicating his lack of knowledge on the subject. See Transcript at 5-6.
The only question before this Court is whether there is any legal requirement that the instrument in question be certified annually. Conn. Gen. Stat. 14-227a (e) authorizes the Department of Health Services to choose the methods of and devices for testing the driver suspected of being under the influence of alcohol.[6] However, the Department of Health Services does not require annual recertification of the equipment. See Conn. Agencies Regs. 14-227a-1 to -10 (1983). All that is required is a certification when the device is initially put into operation. See Conn. Agencies Regs. 14-227a-8 (1983). The plaintiff admits that the equipment had been recertified six times since 1985. See Plaintiff's Brief at 6 and Defendant's Exhibit 1 cited therein. Thus, that provision of the regulations has clearly been satisfied.
The plaintiff further claims that the equipment had not been maintained and the test therefore violated Conn. Agencies Regs.14-227a-6 (1983), which requires the testing instrument to be "subject to proper maintenance." See Plaintiff's Brief at 6-7. Specifically, he argues that "the police officer testified the equipment was recertified each time it was repaired. . . The absence of recertification from June of 1988 would indicate no repairs or maintenance was performed on the equipment since June of 1988." Plaintiff's Brief at 6-7 (citing Transcript at 5).
However, the plaintiff's argument is defective in two significant ways. First, even if a lack of recertification indicates an absence of repairs, it does not necessarily mean an absence of needed repairs. Rather, it could be that the machine was working perfectly and did not need any repairs. More importantly, however, the police officer's testimony did not even mention maintenance. As shown by the plaintiff's own citation above, the officer only indicated a "belief" that the equipment was "certified on an annual basis or any time it [was] sent out for repairs and for recertification." Transcript at 5 (emphasis added). CT Page 1460 Hence, the plaintiff produces no evidence to show that the equipment had not been maintained as directed by the said regulation.
Finally, the plaintiff points out that the police officer administering the test had not checked the box stating "Analytical device was certified by Commission of Health Services" in the DMV Adjudications Form (State's Exhibit A) that he had filled out. However, this issue was not raised at the administrative hearing. The adjudicator had specifically asked the plaintiff's attorney if he had "anything else that [he wanted] to put on the record." The latter declined. Transcript at 13. As such, it would be inappropriate for this Court to conduct a de novo inquiry into that matter.[7]
B. Check for Accuracy at the Beginning or End of Shift
The plaintiff contends that Conn. Agencies Regs. 14-227a-8
(1983) was not complied with since the testing officer had testified that "only `internal standard tests' were done" on the day of the testing of the plaintiff. Plaintiff's Brief at 10 (citing Transcript at 8). The plaintiff then poses a rhetorical question that "[c]ertainly internal tests performed by the machine are not the tests intended by the Regulations or Statutes." Plaintiff's Brief at 10.
The Court's answer can only be based on the law and the facts of the case, however. Nowhere in the regulations is it specified as to what kind of tests are to be performed to check the accuracy of the testing instrument. See Conn. Agencies Regs. 14-227a-1
to -10 (1983). The regulation only mandates that "the instrument shall be checked for accuracy at the beginning of each day of use or departmental shift and sometime before the end of each day or shift by a person certified by the department of health services." Conn. Agencies Regs. 14-227a-8 (1983) (emphasis added).
As to the facts of the case, Officer Popolizio, the testing officer at the North Branford Police Department, testified at the hearing that the departmental shift begins at 11:00 P.M. Three tests were performed to check the accuracy of the machine on the day the plaintiff was tested. These were conducted at 11:24 P.M., 11:34 P.M., and 11:53 P.M., respectively. A fourth test of the machine was performed at 12:03 A.M., the following day, on January 5th. See transcript at 8-9. The plaintiff himself was tested at 11:27 and 11:58 P.M.[8] See State's Exhibit A.
Thus, the first test was that required by the regulation at the beginning of the shift. The third test can be construed as that required at the end of the day, with the fourth as that required at the beginning of the day. If the plaintiff was trying CT Page 1461 to show that no test had been conducted at the beginning of that particular day, he failed to establish this. At any rate, given the fact that the machine was tested four times during the relevant period of thirty-nine minutes, there was, by any standard, more than enough evidence to establish the accuracy of the machine. Under these circumstances, the plaintiff's second claim at best amounts to "a microscopic search for technical infirmities in the [commissioner's] action." Brazo v. Real Estate Commission,177 Conn. 515, 519, 418 A.2d 883 (1979).
The plaintiff tries to pursue his argument by showing that the testing officer did not check a box that stated "Analytical device was checked for accuracy prior to each test and after each test by a person certified by the department of Health Services," when completing the DMV Adjudication Form. Plaintiff's Brief at 9 (citing State's Exhibit A). The issue of whether the particular box was checked was not raised at the hearing below and can, therefore, not be properly brought before this Court.[9]
As to the merits of the argument itself, the record clearly seems to contradict this assertion. When the timing is compared for each of the tests performed on the machine as well as on the plaintiff, it is clear that the device had been checked for accuracy prior to and after each test was performed on the plaintiff.[10] As for the certification of the testing officer, the record only shows that the plaintiff asked the officer if the latter had brought "evidence of [his] certification with [him]." The officer replied that he had. Transcript at 7. No further discussion of this evidence followed. If the certification was defective in any manner, the plaintiff failed to raise the issue at the hearing below and cannot be allowed to do so now.[11]
C. Witnessing Officer's Administration of the Oath
Conn. Agencies Regs. 14-227b-10 (1990) requires the DMV Adjudications form to "be signed and sworn to under penalty of false statement by the officer . . . who administered or caused to be administered a chemical analysis." The testing was performed in the North Branford Police Department by Officer Popolizio of that department. The oath was administered to Officer Popolizio by Lieutenant Harold Oren of the East Haven Police Department. From this, the plaintiff assumes that the signing also occurred in East Haven. On the basis of this assumption, he contends that "the witnessing officers [sic] . . . taking the oath of the testing officer when not in his presence is in violation of 14-227b-10." Plaintiff's Brief at 11. The plaintiff further contests the validity of the police report in that Lt. Oren had not dated his signature.
At the administrative hearing, however, the plaintiff had made CT Page 1462 no objection to the admission of the police report. See Transcript at 3. As such, the issue is beyond the scope of review of this Court. Even if the Court were to review it, however, it would find the contention to be without merit. While it was established that Lt. Oren belongs to the East Haven Police Department and that the testing took place in the North Branford Police Department, there is nothing in the record to preclude the possibility that Lt. Oren might have accompanied the arresting officer to North Branford, where he might have then administered the oath to the testing officer. See State's Exhibit A and Transcript at 12.[12]
As to Lt. Oren's not dating his signature in the police report, that is purely a technical issue that should have been presented to the adjudicator. By not raising it below, nor objecting to the admission of the report itself at the hearing, the plaintiff has effectively foreclosed the possibility of a review by this Court.[13]
In short, there is ample evidence on the record to support the findings of the adjudicator on each of the issues enumerated by the Conn. Acts 89-314.
The appeal is dismissed.
Dated at New Haven, Connecticut this 20th day of August, 1990.
JON C. BLUE JUDGE OF THE SUPERIOR COURT