[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On December 5, 1986, Bio-Gen Torrington Partnership ("Bio-Gen") applied to the Connecticut Siting Council ("Council") for a Certificate of Environmental Compatibility and Public Need ("Certificate") to build and operate an electricity generating facility in the Town of Torrington. Bio-Gen proposes to burn wood chips as fuel and sell the electricity generated by the facility to the Connecticut Light and Power Company CLP.
This is an administrative appeal filed by the City of Torrington, the Torrington Planning and Zoning Commission, and the Torrington Inland Wetlands Commission ("plaintiffs") from a decision of the Council of November 22, 1989 granting a Certificate to Bio-Gen for the construction and operation of the proposed facility, pursuant to sections 16-50k and16-50p of the Connecticut General Statutes.
The Council is a state agency charged with the responsibility of balancing the need for public utility services with the environmental consequences associated the location, construction and operation of facilities which produce and supply said services. Conn. Gen. Stat. sect. 16-50g. CT Page 8111
Subsequent to giving notice, the Council conducted public hearings on the application filed by Bio-Gen on February 6, 7, 8, 9, 10, and 28, March 29, 30 and 31, April 11 and 13, and May 17 and 18, 1989. In addition to volumes of exhibits submitted to and considered by the Council, at least 17 sworn witnesses testified during the 13 days of hearing.
The plaintiffs complaint is a broad scale attack upon the procedures, findings, opinion and decision of the council. However, as briefed[1]
the complaint is composed of six major allegations: (1) The Council lacked jurisdiction; (2) The Council improperly revoked orders of the City of Torrington Planning and Zoning Commission; (3) The Council violated the public Utility Environmental Standards Act; (4) The Council failed to comply with the Connecticut Environmental Protection Act; (5) The Council violated the plaintiff's right to due process (6) The Council based its discretion.
AGGRIEVEMENT
The court's jurisdiction over the subject mater of an administrative appeal rests upon proof that the plaintiff has been aggrieved by the decision of the agency. Lewin v. United States Surgical Corp.,21 Conn. App. 629, 631 (1990). The mere fact that a plaintiff has been a participant or a party at a hearing before the agency does not constitute proof of aggrievement. Hartford Distributors, Inc. v. Liquor Control Commission, 177 Conn. 616, 62 (1979). "Aggrievement, when not based upon a specific statute, is determined by way of a well settled twofold test. First, the plaintiff, must successfully demonstrate a specific, personal and legal interest in the subject matter of a decision. Second they must successfully establish that this interest has been specifically and injuriously effected by the decision. Further, an aggrieved party must have a claim that is distinguishable from the concerns of the community at large." (Citations omitted) Lewin v. United States Surgical Corp., supra at 631. Aggrievement is established if there is a possibility as distinguished from a certainty that some legally protected interest has been adversely effected, Hill v. Planning Commission, 181 Conn. 442, 445 (1985).
In the instant case, the court takes judicial notice of the fact that the Torrington Planning and Zoning Commission is a municipal agency charged with administering Torrington's zoning regulations, and that the Torrington Inland Wetlands Commission is a municipal agency charged with the responsibility of administering Torrington's inland wetlands regulations.
The plaintiffs have alleged that the Siting Council engaged in procedural irregularities which deprived them of their right to fully participate in the proceeding before the Council. In addition, the Inland Wetlands Commission alleges that the Council did not adequately consider the impact of water use by the proposed facility and that this may result in harm to the surrounding wetlands, the protection of which is within the purview of the commission. Also, the zoning commission alleges that the Council improperly pre-empted their statutory authority with respect to CT Page 8112 Bio-Gen's application to that commission, that it did not adequately take into consideration the effect of truck traffic in the area which had been the subject of two recent fatal accidents, and that it did not adequately consider the noise pollution which would result from the operation of the facility. The court finds that the record is sufficient to prove by a fair preponderance of the evidence that these are among several legally protected interests of the plaintiffs that have possibly been specifically and injuriously effected by the actions and decisions of the Siting Council. Consequently the court finds that the plaintiffs are sufficiently aggrieved to bring this appeal.
JURISDICTION
While it is undisputed that notice of the public hearings was properly published, and the plaintiffs were properly served with the application as required under Section 16-501(b) of the General Statutes, the plaintiffs claim the Siting Council lacked jurisdiction in this case because Bio-Gen failed to serve the Torrington Conservation Commission and the State Office of Policy and Management with copies of the application.
A defect in personal notice does not deprive an agency of subject matter jurisdiction. The only notice of constitutional dimension is notice of the hearing, not a notice of the filing of an application for a Certificate. Mobley v. Metro Mobile CTS of Fairfield, County, Inc. 216 Conn. 1 (1990). The Court notes that neither the Conservation Commission nor the Office of Policy and Management are parties to this appeal and neither agency has complained to the Council, or to this court, about lack of notice. In addition, both agencies must have had de facto notice of the hearings conducted by the Council regarding the application as each participated in the proceedings. The Office of Policy and Management filed written comments with the Council and Mr. Ray Wilcox of the Torrington Conservation Commission presented oral comments to the council on February 6, 1989, the first day of hearing. By participating in the proceedings the agencies in question effectively waived notice.
The court finds that the plaintiff's have not shown how they were prejudiced by lack of notice to any other agency. Having been properly served themselves they do not have standing to raise a lack of notice to any other party. Intervale Homeowners Ass'n. v. Environmental Protection Board,19 Conn. App. 334 (1989). The court finds that the council did have jurisdiction in the instant case.
TORRINGTON PLANING AND ZONING COMMISSION ORDERS
On December 5, 1988, Bio-Gen filed an application for a Certificate of Environmental Compatibility with the Siting Counsel. Pursuant to Section 16-501(b)(A) of the General Statutes, Bio-Gen filed a copy of that application with the Torrington Planning and Zoning Commission on that same date. CT Page 8113
On December 30, 1988 the zoning commission notified Bio-Gen that it would require additional information before it could act upon the application and, on the same date, the zoning commission notified both Bio-Gen and the Council that the Torrington Zoning Regulations would not permit a facility of the type proposed by Bio-Gen to operate within the City of Torrington. (Record-Letter of 12-30-88).
On January 27, 1989, Bio-Gen filed a timely appeal of the decision and order of the zoning commission with the Council and sought a de novo review pursuant to Section 16-50x(d).
On February 6, 1989 the City of Torrington notified Bio Gen that the city had denied its application for a site plan pursuant to section 8-7d(b) of the General Statutes and on March 8, 1989, Bio Gen appealed that order to the Council and again sought a de novo review. See Findings 252 through 257).
On November 22, 1989, following completion of the record, the Council voted 7 to 2 to revoke the orders of the zoning commission and issued its own Decision and Order of the same date in substitution thereof. (Decision and Order). The plaintiffs argue that the Council's decision to remove the zoning commission's orders was not supported by the record nor the findings of the Council. They also argue that the zoning commission was never given an opportunity to rule upon the merits of Bio-Gen's application because it wasn't provided with the information it required. The court disagrees.
The leading case directly on point concerning this subject is Town of Preston v. Connecticut Sitting Council, 20 Conn. App. 474 (1990) in which the Appellate Court held that the Sitting Council has exclusive jurisdiction over the location and type of public utility facilities within this state. ""With respect to the separate and distinct application process before the zoning commission, under General Statutes 16-50x)d), the decision of the zoning commission may be appealed to the council, "which shall have jurisdiction, in the course of any proceeding on an application for a certificate or otherwise, to affirm, modify or revoke such order [of the local agency] or make any order in substitution thereof. . ."". Id at 483.
A zoning commission does not have jurisdiction to review an application to the Council for a certificate, nor is the Council encumbered in its de novo review of decisions from zoning commissions to those narrow issues which concern only the municipality. It may approve of a site for a proposed facility even if the facility fails to meet local zoning requirements. The mandates of the Council under the General Statutes "go far beyond local zoning concerns". The Court in Preston also stated that "It is clear that, under PUESA framework, the role of the council in its review of local zoning decisions was meant to be comprehensive and plenary." supra at 485.
In the instant case the transcripts of the hearings reflect that on the first day of hearings the Council Chairperson indicates that the Council would be conducting a de novo hearing and that the Council would make CT Page 8114 whatever time was necessary to develop facts relevant to the wetlands or other protection concerns of the community. She invited input from anybody who was interested. (Transcript 2-6-90).
Testimony was received by the Council from Dana McGinnis Torrington City Planner; George Simoncelli, Torrington Corporation Counsel; James Rokos, Torrington Director of Health; Matthew Dominy, Torrington Director of Public Works; and Susan Strand, former member of the Torrington Planning and Zoning Commission, among others, all of whom testified regarding zoning and wetlands matters. The court finds that the record contains substantial evidence which was presented to the Council regarding local concerns of both zoning and wetlands issues from which the Council could and did make appropriate findings and issue orders regarding zoning and wetlands matters. See Findings 32 through 58 as well as Opinion and Decision and Order.
The court finds that the plaintiffs had ample opportunity prior to and during the four months of hearings to obtain and present to the Council whatever information and material it felt was important to their position regarding zoning and wetlands concerns. Indeed the court finds from the record that the plaintiffs fully participated and were meaningfully involved in the de novo hearings before the Council.
Finally, once the plaintiff zoning commission notified both Bio-Gen, and the Council that the facility proposed by Bio-Gen would not be permitted under the Torrington zoning regulations it became questionable, at best, as to whether the submission of the additional information requested of Bio-Gen by the zoning commission would be meaningful. While such information might have been useful with respect to a possible change in the zoning regulations., or perhaps an appeal to the zoning board of appeals) neither was a subject then under consideration. The application before the zoning commission had effectively been denied on the same date the additional information was requested. Consequently, the resulting appeal to the Council was both proper and appropriate.
The court finds that the Council properly revoked the orders of the Torrington Planning and Zoning Commission within its authority under Section 16-50x(d)J and that such action did not substantially prejudice the rights of the plaintiffs as they were given ample opportunity to address local concerns during the de novo hearings before the Council.
PUBLIC UTILITY ENVIRONMENTAL STANDARDS ACT (PUESA)
The plaintiffs have launched a wide scale attack upon the Council's findings and decision to issue a certificate alleging numerous procedural and factual irregularities in violation of General Statutes Sections 16-599 through 16-50z as well as Section 4-183. The court finds these claims to to be without merit.
In reviewing agency decisions the court can not substitute its judgment CT Page 8115 for that of the agency with respect to the weight of the evidence, credibility of witnesses, or questions of fact that are supported by the record. State Medical Society v. Board of Examiners in Podiatry,208 Conn. 709, 717 (1988); Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 539-41 (1987). The agency findings of fact must be accorded considerable weight by the reviewing courts. Connecticut Hospital Assn., Inc. v. Commission on Hospitals Health Care 200 Conn. 133, 140 (1986).
The court has conducted a careful review of each briefed issues, as discussed infra, and finds that the plaintiffs have not sustained their burden as to these allegations.
A. Adequacy of Notice.
The plaintiffs contend that they were not fairly or sufficiently appraised of the Bio-Gen proposal being considered and acted upon by the Council. Specifically, they claim that they did not receive sufficient notice because the applicant refused to submit a local application and they allege that they were not given fair notice because the applicant substantially modified the application during the hearing process. The issue concerning the requirement that an applicant seek local permission for the proposed facility has been addressed by the court, supra, and need not be repeated.
It is undisputed that the plaintiffs were properly served with a copy of the application and that public notice of the Council hearings was properly published. In addition, the record clearly reflects that the plaintiffs fully participated in pre and post hearing proceedings as well as the thirteen days of hearings before the Council. Nevertheless, the plaintiffs argue that because Bio-Gen did not comply with the request of the planning and zoning and wetlands commissions for additional information relating to local approval of the proposed facility, and because several changes to the facility were permitted in the application before the Council during the hearings, they were effectively denied the opportunity to prepare for or meaningfully and fully participate in the proceedings. The court finds these assertions to be without merit.
There is substantial evidence in the record that the notice given to the plaintiffs satisfied the provisions of the Uniform Administrative Procedures Act (UAPA) C.G.S. section 4-177(b) as well as the Public Utilities Environmental Standards Act (PUESA) C.G.S. section 16-50. The UAPA "exceed[s] the minimal procedural safeguards mandated by the due process clause." Adamchek v. Board of Education, 174 Conn. 366, 369 (1978); Fleischman v. Board of Examiners in Podiatry Conn. App. 181, 191 (1990).
The purpose of notice is to give all affected parties an "opportunity to be heard and to be apprised of the relief sought". Mobley v. Metro Mobile CTS of Fairfield County, Inc., 211 Conn. 1, 9 (1990); Schartz v. Hamden,168 Conn. 8, 14 (1975). Included in the notices given in this case was information which adequately informed the plaintiffs of the nature, use and CT Page 8116 location of the proposed facility, as well as a statement of the time, place, and nature of the hearing before the Council. (See application and notice). The record is clear and the court finds that the plaintiffs had ample time and opportunity to obtain, and were not precluded from developing and presenting to the Council, whatever information they felt was relevant and important to their positions through the use of pre-hearing interrogatories (City exhibit 2), the submission of documentary evidence, cross-examination of witnesses and the presentation of witnesses and other evidence throughout the four months of hearings.
The plaintiffs also claim that the applicant was permitted to change the application during the hearing process without being required to submit a new application. Specifically, in their brief, the plaintiffs cite six such changes or amendments which they claim affectively changed the nature of the facility. (plaintiff's brief p. 17-18). They argue that under section 16-501 and 16-50m the applicant should have been required to submit a new application and that the plaintiffs were entitled to a 30 day notice and a delay in the hearings with respect to the amendments.
The plaintiffs reliance on Section 16-501 and 16-50m, suggesting that said statutes require that a new application be filed and that public hearings be scheduled not less than 10 days thereafter whenever substantial amendments to an application for a Certificate are filed, is inappropriate to this case.
The statutes referred to by the plaintiffs are concerned with two separate procedures: an application for an original certificate and, an application to modify an existing certificate. [See Section 16-501(a) and (d), and 16-50m(q) and (b)]. The statutes do not require new notice or the scheduling of new public hearings with respect to amendments or modifications of an application for a certificate. In the case of an application to modify an existing certificate the statute provides that a hearing is to be held and notice to be given if in the opinion of the Council the amendment would result in any substantial changes to the authorized facility or result in a material effect upon the environment. [Section 16050(b)(1)]
Since the amendments to the application in the instant case were submitted to the Council within the framework of an ongoing hearing in connection with an original application for a certificate, and are not concerned with amendments to an existing certificate, the issue of new notice and new or additional public hearings is inapplicable.
Additionally, the court rejects the plaintiffs contention that the changes and modifications proposed by Bio-Gen and acted upon by the Council fundamentally changed the nature of the facility in question. This facility was proposed as a wood burning 13 (net) megawatt electricity generating facility on a specific parcel of land and that is exactly the facility which was approved and authorized by the Council. The modifications addressed and mandated by the Council merely reflected its CT Page 8117 concerns over possible environmental issues, and that is exactly the purpose of the hearings and function of the Council.
With respect to the plaintiff's claim that they were not given sufficient time to study the proposed changes to the facility, the court notes that five of the six changes complained of in plaintiff's brief were presented to the Council, and the plaintiffs, during the February, 1989 hearings. The hearings did not conclude until May, some three months later. The remaining change concerning the dry cooling system was made at the clear suggestion of the chairperson of the Council during remarks made by her to counsel for the applicant and was submitted to the Council and the other parties on March 29, 1989. (Transcript) The court find clear and substantial evidence in the record that plaintiffs had sufficient time to both study and to respond to these proposals during the several months of hearings during which evidence concerning these and other proposals were being considered by the Council. B. Extra record evidence.
In October, 1989 the Council issued proposed findings and requested that the parties submit briefs, comments and exceptions with respect to those findings. In addition to submitting its brief, which included suggested changes to the findings of this Council, Bio-Gen also requested that the Council take administrative notice of several matters which occurred subsequent to the close of the public hearings: (1) a zone change near the site of the proposed facility; (2) a FAA decision regarding the smoke stack for the facility; and, (3) the City of Torrington's decision concerning closing of a nearby road and repairing a nearby bridge.
The plaintiffs suggest that the submission of the request to take administrative notice of these matters constituted an improper ex parte communication with the Council. They also argue that they were denied their right to examine and rebut this "extra record evidence" and that the Council may have been improperly influenced by this material in making its findings and decision to issue the Certificate. The court disagrees and finds that the plaintiffs have not met their burden of proof as to these allegations.
This was not an ex parte communication. The request by Bio-Gen that the Council take administrative notice of the information in question was presented by means of legal argument made by counsel for the applicant and served upon all parties. Not only did the plaintiffs have an opportunity to respond to Bio-Gen's brief and request for administrative notice, they in fact did respond and object by means of a letter to the Council of October 19, 1989 and a brief of November 3, 1989.
The fact of the matter is that the Council denied Bio-Gen's request that it take administrative notice of the information in question. In addition, the record shows that the Council did not adopt Bio-Gen's proposed findings or conditions. Indeed, the Council does not appear to have made any changes at all as the result of Bio-Gen's proposals and arguments. There is no significant difference between the draft findings of the Council, which were prepared before the material in question was submitted by Bio-Gen, and the CT Page 8118 final findings of the Council. There is nothing of substance contained within the entire record which would suggest that the council was influenced by or in any way used the information in question.
The court finds that there is insufficient evidence to support plaintiffs contention that the information and argument submitted by Bio-Gen may have "tipped the balance" in the Council's decision making process. C. Conditions imposed upon the granting of the Certificate.
The plaintiffs further allege that by issuing a Certificate subject to the requirement that Bio-Gen satisfy a number of specific conditions precedent and subsequent to the construction and operation of the facility the Council abused its discretion and acted improperly. They argue that "by postponing the discussion of certain issues until after the decision, the Siting Council effectively cut off plaintiff's rights to be heard . . ." (plaintiff's brief p. 23). The court disagrees and notes that once again the leading case on this subject is Town of Preston v. Connecticut Siting Council, supra.
Section 16-50p of the General Statutes clearly authorizes the Council to grant a Certificate on "such terms, conditions, limitations or modifications of the construction or operation of the facility as the council may deem appropriate." (emphasis added). In compliance with its mandate to protect the environment, the Council carefully pointed out what steps it had taken, and what it proposed to do, to prevent any adverse imput upon the environment with respect to the issues of water use and discharge, air pollution, the source and type of fuel to be used, waste products, noise traffic) zoning and wetlands concerns, the aquifer and Still River, and the aesthetic qualities of the facility. (See: Opinion and Decision and Order). The majority of the concerns addressed by the council were raised during the hearings in which the plaintiffs played an active and constructive role.
The Decision and Order contains a significant number of specific conditions and requirements related to environmental issues which must be met and satisfied by Bio-Gen before it can begin construction of the facility. There are additional conditions which Bio-Gen must meet and satisfy before it can begin operation, and even further conditions which it must continue to meet in order to continue operations.
The preamble to the Decision and Order of the Council clearly states that "[f]ailure to comply with the following conditions may subject the applicant to temporary and permanent injunctive action, and/or civil penalties. . . pursuant to CGS 16-50u." Thus, it is clear that the Councils oversight of the Bio-Gen operation is a continuing function and that satisfaction of the conditions imposed by the Council will be required if the facility is to begin and/or continue operation.
The Appellate Court has ruled that the Council has a statutory duty to seek input from and the expertise of other state agencies. See: CGS16-50j(g). "The legislature clearly contemplated the involvement of other CT Page 8119 state agencies to supply information to the council in order to render its decision on the granting or denying of a certificate." Town of Preston v. Connecticut Siting Council supra at 491. It is clearly within the statutory authority of the Council to grant a certificate subject to specific conditions, including subsequent compliance with DEP standards and regulations. The court will not and can not "substitute [its] judgment for that of the council regarding the adequacy and reasonableness of the condition[s]." Id., at 492.
The plaintiffs also suggest that the Council should not postpone the establishment of certain environmentally related procedures until after the issuance of a Certificate because it will deprive the plaintiffs of the opportunity to participate in and contribute to that decision making process which affects many local concerns. In point of fact, the Council has not excluded the parties from participating in many of the procedures designed to satisfy its conditions. Quite the contrary is true.
The parties are to be given the opportunity to comment upon and make recommendations concerning the testing procedures to be developed and approved by the Council with respect to the demolition/recycled wood to be burned (Decision and Order). In addition., the council ordered the applicant to submit a detailed Development and Management Plan to and secure the approval of the council for dealing with a number of concerns raised by the plaintiffs. Among other items the plan must include a detailed final site plan, taking into account setbacks for the wetlands and the Still River. It must include plans and details for dealing with landscaping, soil erosion, sedimentation, litter, noise, odors, aquifer protection and traffic. Contrary to the assertions of the plaintiffs, these are conditions which the plaintiffs will have an opportunity to review and on which they will have a right to be heard. "The proposed DM plan shall be provided to parties and intervenors, if service is requested, who may submit comments to the Council within 20 days." (Decision and Orders).
The court finds that the conditions imposed by the Council were proper and appropriate.
D. Adequacy of the record.
Prior to granting a Certificate, the Council is required, pursuant to Section 16-50p(a) of the General Statutes to find and determine the nature and probable environmental impact of the proposed facility. (emphasis added). Within the context of that environmental imput analysis and evaluation, the Council must specify every significant adverse effect and conflict with state policies which it finds, if any, and then indicate why said significant adverse environmental effect is not sufficient to deny the issuance of the certificate.
The plaintiffs claim that the record before the Council was inadequate and deficient in a number of areas (plaintiff's brief p-28-29) and because of these alleged inadequacies in the record they allege that the Council CT Page 8120 did not and/or could not find and determine the nature of the probable environmental impact, including a determination of any significant adverse effects, of the proposed facility. The court disagrees and finds that the plaintiffs have not met their burden of proof as to this issue.
The court finds that the Council did consider each of the areas of environmental concern mandated by statutes[2] and indeed made findings concerning those issues. The court further finds that the citations of the Council at the end of each of its findings refers to substantial evidence in the record which if believed and accepted by the Council fully support those findings. Specifically, the Council considered the natural environment (Findings 32-36 and 51-58); ecological balance (Findings 37-40, 51-58 and 116-128); public health and safety (Findings 50, 70-73, 131-143, 146-150 and 198-237); scenic, historic and recreational matters (Findings 238 and
244); forests and parks (Findings 116 and 119-125); air and water purity (Findings 103-109 and 151-197); fish and wildlife (Findings 242-243).
Additionally, the Council adequately considered the availability, use and discharge of water at the facility and the resulting effect upon the wetlands and Still River. For example, the Council found that the facility would need up to 52,000 gallons of water per day during times of peek usage. (Findings 87 and 91). It found that Bio-Gen could obtain the water it needs from the city water supply and from on site wells. (Findings 92-96). It made findings concerning the impact of the facility upon the wetlands (Findings 51-58) as well as water usage (Findings 87-91), water supply (Findings 92-101) and water discharge (Findings 106-109 and 204).
While no hydrogeologic study was conducted of the proposed site, the Council did consider the possible effect of using on site wells (Findings 99-101), and it found that there would be an impact upon the Still River during seasonal low flow periods, and that the use of on site wells could cause conflict with existing ground water allocations. (emphasis added) (Finding 101). Thus, while there were findings of possible adverse environmental effects, there were no findings of significant adverse effects resulting from the construction and operation of the facility. (emphasis added).
It is of significance and importance that as an expression of its awareness of the possible impact of water usage upon the surrounding environment, and as a means of balancing the protection of the environment with the need for the facility, the Council ordered in its Decision and Order that "[t]he Still River, adjacent wetlands, and the site aquifer are not to be substantially affected by the operation of the facility." This is not a finding, it is a condition of operation, a violation of which would subject Bio-Gen to the sanctions cited in the preamble to the Decision and Order of the Siting Council.
Additional concerns raised by the plaintiffs which the court finds were adequately considered by the Council and supported by substantial evidence CT Page 8121 in the record involve the burning of demolition wood (Findings 116-118, 126-128, and 131-143), air quality (Findings 151-197), noise (Findings 223-235), and the effect upon the forests (Findings 14-19, 23-24, 119-128, and 132). The fact that testimony concerning noise resulting from the facility was not presented by an acoustical engineer is of no evidentiary significance.
The record is clear that the Council did not find any significant adverse environmental effects that would result from the construction or operation of the facility, as that facility was ultimately authorized by the Council. Had it found such a significant-adverse effect it would have been required to specify and address that finding. Indeed, the Council would not have been permitted to issue a Certificate had it found any such significant adverse environmental effect, unless it was able to state and justify why any such effect was not sufficient to deny the certificate. C.G.S. Section 16-50p.
There is no requirement within the statute that the Council make an affirmative finding of no significant adverse environmental effect. It is only upon finding that such effect exists that the Council is required to further address the issue. Since administrative agencies are presumed to have acted legally and properly, Murach v. Planning Zoning Commission,196 Conn. 192, 205 (1985); Brecciaroli v. Commissioner of Environmental Protection, 168, 349, 356 (1975), the burden is upon the plaintiffs to prove that the Council acted illegally in this instance. The court finds that the plaintiffs have not met this burden.
The plaintiffs also complain that no consideration of alternate sites was undertaken by Bio-Gen or the Council. Actually, the Council did make findings concerning site selection and the record contains substantial evidence concerning the consideration and selection of sites by Bio-Gen for the proposed facility. (Findings 29-31; Bio-Gen application). However, since the Council did not find a significant adverse environmental impact resulting from the construction or operation of the facility at the proposed site, there was no need to consider additional sites.
In administrative appeals, the court cannot substitute its judgment for that legally tested in the agency. The court's function is to determine on the record whether there is a logical and rational basis for the decision or whether, in the light of the evidence, the agency has acted illegally or in abuse of its discretion. This is a fundamental limitation on the court. Buckley v. Muzio, 200 Conn. 1, 3 (1986); See, Conn. Gen. Statutes section4-183(g). The burden of proving illegality or an abuse of discretion is on the party asserting it. Woodbury Water Co. v. Public Utilities Commission,174 Conn. 258, 260 (1978).
The court is limited to determining whether the record reflecting the evidence which was before the Council supports the conclusions of the Council. The weight and credibility to be given to testimony and evidence presented before the agency is for the agency to evaluate. The court cannot CT Page 8122 substitute its judgment for that of the agency in the area of the credibility or the weight to be given to the evidence. Huck v. Inland Wetlands Watercourse Agency, supra at 539-41; CH enterprises, Inc. v. Commissioner of Motor Vehicles, 176 Conn. 11, 12 (1978). The agency is entitled to accept that which is reasonably finds persuasive and reject that which it finds unpersuasive in reaching its decision. Briggs v. State Employee's Retirement Commission, 210 Conn. 214, 217 (1989).
After reviewing and considering the Council's more than two hundred findings, together with its Opinion and the stringent conditions and requirements in its Decision and Order, the court finds that the Council gave careful consideration to each of the possible effects upon the environment as required by statute and is raised by the plaintiffs. The findings of fact with respect to these environmental concerns are substantially supported by the record as referenced by the Council after each finding.
E. Public need.
The plaintiffs claim that the facts do not support the finding by the Council that building and operating the proposed facility will meet a public need as provided under Section 16-509 of the General Statutes. They argue that it has not been shown that there is a need for the electricity to be generated and that said electricity would not be produced at the lowest reasonable cost to consumers. This narrow construction of the term "public need" was recently rejected by the Appellate Court in Town of Preston v. Connecticut Siting Council, 20 Conn. App. 474, 485 (1990), cert. denied214 Conn. 803 (1990).
Section 16-509 of the General Statutes states that the legislature purpose in enacting the Public Utility Environmental Standards Act ("PUESA") under which the council was created is to ". . . provide for the balancing of the need for adequate and reliable public utility services at the lowest reasonable cost to consumers with the need to protect the environment and ecology of the state . . . [and] encourage research to develop new and improved methods of generating, storage and transmitting electricity and fuel". A review of the Findings, Opinion, and Decision and Order of the Council clearly reveals that the council considered not only the future need for generating additional electricity but also gave carefully consideration to the "broad mandate of PUESA to protect the environment, . . . [to resrict] the number and size of electric facilities to be built in this state . . . [and employ] resource recovery facilities to eliminate solid waste." Town of Preston v. Connecticut Siting Council, supra at 489.
In the instant case the Council determined that "[t]he project could help to diversify the State's energy mix, and reduce Connecticut's dependence on imported oil by over 9.7 million gallon year consistent with the Council's charge in 16-50g to foster new and improved energy resources. (Opinion). Additionally, the Council concluded that the use of wood chips CT Page 8123 from recycled wood would reduce the need to deposit such materials in overburdened landfills throughout the state.
While it is true that the cost to the taxpayer may be greater than the cost of producing electricity by other means (Finding 15), the Council was entitled to accept the determination of the DPUC that it is reasonably likely that the taxpayer would not be adversely affected over the term of the contract with Bio-Gen (Finding 19). The Council found that the facility had been approved by the DPUC as part of a 450 MW block of private power projects (Block One) which it was originally estimated would be needed to meet electricity generation shortfall in the mid-1990's. It was subsequently determined that the Block One electricity would not be needed until the year 2001. (Findings 14 and 17).
The Council also determined that the lead time for the construction of base-load electrical generating plants is between six and ten years. (Finding 27). It would neither be prudent nor in the public interest to wait until the actual need for additional electricity is at hand to begin construction of new generating facilities. Consequently, as has been stated by the Appellate Court. this court will not substitute its judgment for that of the Council regarding the timing of making a facility operational when the council's decision is supported by substantial evidence in the record. Tanner v. Conservation Commission, 15 Conn. App. 336, 339 (1988). See Preston, supra at 490.
The court finds that the decision of the Council as to need is supported by substantial evidence contained in the record, specifically as cited by the Council in support of its own findings.
CONNECTICUT ENVIRONMENTAL PROTECTION ACT
The plaintiffs further allege that the Council failed to fulfill the requirements of the Connecticut Environmental Protection Act ("CEPA") pursuant to Section 22a-19(b) of the general Statutes in that if did not make a determination of whether there would be any unreasonable harm to the environment, and whether there is a feasible and prudent alternative available to prevent such harm from occurring.
Section 22a-19(b) imposes a duty upon an agency "to consider whether the proposed protect does or is reasonably likely to cause unreasonable pollution . . . [or destroy] the public trust in the air, water or other natural resources of the state, and, if so, to reject the project so long as considering all the relevant circumstances there is a reasonable and prudent alternative." Mystic Marinelife Aquarium v. Gill, 175 Conn. 483,499 (1978).
The legislative act creating the Connecticut Siting Council is the Public Utility Environmental Standards Act. Due of the fundamental functions of the Council under this Act is to protect the environment to the extent possible while satisfying the public need for adequate electrical power. CT Page 8124 That is why the applicant, Bio-Gen, was required to obtain from the Council a Certificate of Environmental Compatibility and Public Need before building and/or operating the proposed facility In issuing the Certificate the Council necessarily concluded that building and operating the facility, in accordance with the modifications and subject to the conditions imposed by the Council will be compatible with, and will not unreasonably harm, the environment.
There is no requirement that the Council make an affirmative statement of no environmental impact or that it consider alternatives to the proposed facility unless it finds that the facility will cause unreasonable pollution or harm to the environment. The only requirement is that the Council consider these matters. Mystic Marinelife Aquarium v. Gill, supra.
The court finds that the Council did carefully consider and make findings concerning the effect of the facility upon the environment, including its effect upon the air and water, as required under the CEPA. Each of the areas of environmental concern has been addressed by the court, supra. Because the record reflecting the concern and findings of the Council with respect to each of these environmental issues is substantial, and because they fully support the decision of the Council to issue a Certificate, this court will not and can not second guess that decision.
DUE PROCESS
The plaintiffs allege that their due process rights have been violated because they were denied the right to cross-examine witnesses, present evidence, secure information necessary to be able to meaningfully participate in the hearings before the agency, rebut "extra record evidence, and be informed of the reasons why the zoning commission orders were revoked. (Plaintiff's brief p. 42). The court disagrees.
Each of these allegations has been addressed by the court elsewhere in this decision and each has been found to be without merit. For the reasons stated, supra, and after a review of the entire record., the court finds that the plaintiffs have not satisfied their burden of proof concerning their claims of being denied due process by the Siting Council.
CUMULATIVE EFFECT OF THE DECISIONS OF THE SITING COUNCIL
During oral argument before this court on June 7, 1991 counsel for the plaintiffs acknowledged that the Connecticut Appellate Court in Town of Preston v. Connecticut Siting Council, supra, addressed and resolved many of the individual issues being raised in this appeal Nevertheless, the plaintiffs urge this court to look beyond the resolution of those individual issues and focus upon the cumulative effort of the procedures and decisions of the Council. In other words, the plaintiffs argue that even if the court should find for the defendants on the individual issues raised in the appeal., the court can and should find that the totality of the decisions and procedures used by the Council in the instant case constituted an abuse CT Page 8125 of discretion requiring reversal. The plaintiffs cite no authority to illuminate of this somewhat unorthodox approach and consequently the court declines to travel down this dimly lit path. The decisions and procedures of, the Council are supported by the record and are in conformity with the holdings of Preston and other cited decisions of our Appellate and Supreme Courts.
The court finds insufficient evidence to conclude that the Siting Council acted improperly or abused its discretion in this matter.
The appeal is dismissed.
Dated at Enfield this 10th day of September, 1991.